GEO. A. HORMEL & COMPANY, INC. v. THE CITY OF WINSTON-SALEM.

(Filed 24 February, 1965.)

**1. Pleadings § 28—**

Plaintiff must make out his case according to his allegations, and the allegations and proof must correspond in order to establish a cause of action.

**2. Municipal Corporations § 15—**

In this action to recover damages resulting from the overflow of waters from a culvert conveying surface waters under a building leased by plaintiff, recovery cannot be had against the city on the theory of its liability for negligence in the maintenance and repair of drains and culverts constructed by it when plaintiff's evidence is to the effect that plaintiff's lessor constructed the culvert which caved in and caused the damage.

**3. Same—**

Mere evidence that defendant city bolted down a manhole in a private drainage line and sealed the holes therein and regularly sent an employee through the private drainage system to see that it was open for the drainage of surface waters from the streets, is insufficient to show that the city adopted and controlled the drainage culvert complained of so as to render the municipality liable for damages resulting from its failure to keep it in repair.

**4. Same—**

In an action to recover for damages resulting from the overflow of waters from a culvert conveying surface water under a building leased by plaintiff, plaintiff may not recover on the theory that defendant municipality gathered and concentrated surface waters into artificial drains and diverted them into the culvert when the theory of the complaint is that the city negligently failed to maintain and repair the drains and there is no allegation of diversion or concentration of surface waters into the culvert.

**5. Pleadings § 25;   Appeal and Error § 7—**

Where the theory of liability alleged in the complaint is that defendant municipality negligently failed to maintain and keep its culvert in repair after it had actual or constructive notice of defects, a motion to amend, made several days before the call of the case in the Supreme Court, so as to allege the theory of liability that the municipality wrongfully diverted the natural flow of surface waters into the culvert and drains, will be denied, since the proposed amendment sets up a wholly different cause of action or substantially changes the action originally sued upon.

APPEAL by plaintiff from *McConnell, J.,* 25 May 1964 Session of FORSYTH. Docketed and argued as Case No. 383, Fall Term 1964.

An action of tort to recover for property damage from water allegedly caused by defendant's negligence.

From a judgment of compulsory nonsuit entered at the close of plaintiff's evidence, it appeals.

*Deal, Hutchins and Minor by Fred S. Hutchins, Sr. and Edwin T. Pullen for plaintiff appellant.*

*Womble, Carlyle, Sandridge & Rice by I. E. Carlyle and Grady Barnhill, Jr., for defendant appellee.*

PARKER, J.   From 1942 until 1962 plaintiff occupied as tenant under lease and used as a manufacturing and distributing branch of its meat packing business parts of certain warehouse buildings in the city of Winston-Salem at 232 South Liberty Street Annex, erected and owned by Liberty Storage Company. C. H. Cherry, branch manager of plaintiff on 26 May 1960, testified: "We occupied both the basement and the main floor of this second building and the one adjacent to it."

This is a summary of the essential allegations of fact in its complaint, based on information and belief:

Many years ago defendant, or its predecessor the city of Winston or town of Salem, installed metal drainpipes for surface waters upon and through the premises owned by Liberty Storage Company, and afterwards leased by it to plaintiff, and covered the same with dirt, and that these pipes were furnished by defendant, or by one or more of its predecessors the city of Winston or the town of Salem. This pipeline has from time to time been inspected and repaired by defendant.

Prior to the spring of 1958 this pipeline had been defective and inadequate so that water "busted out" of one or more manholes, and at such times defendant inspected it and made temporary repairs thereto. In the spring of 1958 defendant bolted and cemented a manhole on the premises occupied by one Lawrence Levy, trading as Lar Mel Displays, which premises are a short distance northwest of the premises occupied by plaintiff, to prevent surface waters from being forced up through a manhole into Levy's premises. When defendant bolted and cemented this manhole, its officers and agents discovered, or should have discovered, that the metal pipes of the drain were decomposed, rotten, and full of holes, and that dirt and rocks had washed or fallen into the pipes so that waters flowing into them would be blocked and cause the metal pipes "to give way" resulting in "washouts" and rendering the drain less adequate to carry off the surface waters of unusual or ordinary rains. With this knowledge defendant should have repaired or replaced these metal pipes.

Paragraph 9.   "This plaintiff is further informed, advised and believes and so alleges that the defendant City of Winston-Salem had from time to time bottled more surface waters and channelled same into these drain pipes so that the volume of water passing through same was and had been gradually increasing for some time and because of the defective condition of said drain pipes, they were insufficient to take care of surface waters."

These drainpipes were full of holes and weak, and consequently surface waters ran out of them and washed the earth around them away, causing the metal pipes to collapse and earth to fall in them blocking the flow of surface water and causing the surface water to burst out

and damage its property, and such negligence on defendant's part proximately caused its loss to its property.

Plaintiff alleges, not on information and belief, that on 26 May 1960, during a rain, the drain pipes gave way, collapsed, and the earth surrounding them filled and clogged the drainpipes to such an extent that the surface waters became blocked, causing further washouts, and the surface waters overran the drain, flowed into the building, and washed out the earth surrounding said pipes doing great damage to plaintiff's property therein.

These essential allegations were denied by defendant in its answer.

Plaintiff in its complaint alleges, and defendant in its answer admits, that plaintiff, according to the requirements of defendant's charter, filed a claim against defendant in apt time for its loss.

Plaintiff's evidence tends to show the following facts: Old Tar Branch in the city of Winston-Salem is a natural water course carrying water at all times. The upstream end of its watershed begins approximately at 5th Street and Trade Street in the city, and from thence the natural flow of water from its watershed is southwardly down this branch for about one-half to three-quarters of a mile, until the branch merges with Salem Creek west of South Main Street in the city. Waters from the east and west side of this branch within its watershed flow into it as a natural water course. The ground in the watershed area slopes north to south. As this branch flows southwardly, it passes through culverts under 4th, 3rd, 2nd, and 1st Streets, under Expressway I-40, and under Brookstown Avenue. The defendant built and maintains the culverts through which the waters of this branch flow under its street rights-of-way. Feeder lines within the street rights-of-way situate in the Watershed of Old Tar Branch were built by the defendant, and the waters therein flow into Old Tar Branch.

North of Brookstown Avenue are the Winston-Salem Southbound Railway Company's station, warehouse, and railway yards. Sometime prior to 1915, the railway built a culvert, running north 457½ feet from Brookstown Avenue to a point where the south line of the buildings now occupied by plaintiff is located, to carry the waters of Old Tar Branch under its railway yard and tracks. Defendant has never maintained or repaired this culvert. At that time this branch north of this culvert was an open stream. This branch at present south of Brookstown Avenue is an open stream.

During the period 1925 to 1929 Liberty Storage Company installed on its property a 54-inch corrugated metal culvert or pipes, beginning at the north end of the railway culvert and running in a northwardly direction 425 feet to the north edge of its property, to carry the waters of Old Tar Branch. Defendant has never maintained or repaired this

metal culvert or pipes. About 1930 Liberty Storage Company built on its property over this metal culvert the buildings leased in part to plaintiff. On the extreme northern end of its property Liberty Storage Company erected over this metal culvert or pipes a two-story brick building, which is 196.25 feet from the northern end of the buildings leased in part by plaintiff, and which was occupied at the times here relevant by one Lawrence W. Levy, trading as Lar Mel Displays, as a tenant. This metal culvert or pipes terminated in a manhole, which defendant did not build, and which was within the building, which Levy afterwards leased. Liberty Storage Company — no date appears in the record — installed two 36-inch metal pipes which run northward from the manhole within the Levy building some 30 feet beyond the northern end of its property to a junction box. This junction box is about 4 x 8 feet across the top and 8 or 10 feet deep. The trial court found as a fact that Robert W. Neilson, director of public works for defendant and a witness for plaintiff, was a registered engineer, and held he was entitled to express an opinion as such. He expressed the opinion that the 54-inch metal culvert installed by Liberty Storage Company on its property was of sufficient size to carry off any water that came to it from the two 36-inch metal pipes installed by Liberty Storage Company. Defendant has never maintained or repaired these two 36-inch pipes.

From this junction box up to the source of Old Tar Branch near 4th Street, its waters flow through pipes built, maintained, and controlled by the property owners through whose lands it flows, except the parts under street rights-of-way. Drainage from streets in the branch's watershed flows into these pipes. Surface waters from catch basins and drains on Belews Street and Academy Street flow into the drainage pipes carrying the waters of Old Tar Branch just north of the properties owned by Liberty Storage Company. Just south of the drainage pipes installed by Liberty Storage Company on its property, defendant directed surface waters from Cemetery Street through a 30 x 38-inch brick culvert into the drainage pipes of Old Tar Branch. In the last 25 or 30 years, defendant has made larger storm inlets, when necessary, within the watershed of Old Tar Branch. From Brookstown Avenue to 4th Street many private owners have built buildings on their lands over the metal pipes or culverts through which flow the waters of Old Tar Branch. Robert W. Neilson testified: "The piping inlets and culverts were put in to carry water underground which normally would have fallen on and run over the surface of the ground in the same direction."

Pursuant to a contract between the State Highway and Public Works Commission and defendant, the Commission built I-40 Express-

way through defendant. The work began around July 1954 and was completed in 1957. The Expressway passed the property of Liberty Storage Company, but did not take any of it. Prior to the building of the Expressway, the surface water that fell on that part of the ground where the Expressway now is within the watershed of Old Tar Branch drained off on top of the ground over the low part of the tracks of Winston-Salem Southbound Railway Company. Since the building of the Expressway, all the surface water that falls on the paved portion of the Expressway and its bridge in the place above specified is carried by a 36-inch pipe installed by the Commission south of the Expressway into the junction box north of the Levy building, and from thence it flows into the 54-inch drainage pipes installed by Liberty Storage Company on its property. The water coming down 41 feet from the top of the bridge, with greater force and concentration that if there were no bridge, would have more head and more force. Because of this pressure and force, "the same size pipe could carry more water." In building the Expressway a cloverleaf was constructed on Main Street about a block north and east of the buildings leased by plaintiff. This 36-inch pipe installed by the Commission, by means of thirty inlets on the Expressway and its approaches, drains an area about 600 to 800 feet east of Old Tar Branch, perhaps 1200 feet. Several of these inlets are in the cloverleaf and others are east of the cloverleaf on Church Street, one block east of Main Street. Manholes and catch basins built in connection with the Expressway drain into metal culverts carrying the waters of Old Tar Branch. The construction of the Expressway did not increase or extend the watershed area drained by Old Tar Branch.

Defendant ordinarily inspects drainage systems carrying water under its public streets to see that they are open and waters could leave its streets. The metal culvert under the property leased by plaintiff had been carrying street and surface waters since it was installed. Galveston Ellis has been an employee of defendant for 42 years. His job is to go through all the different drainage pipes all over the city of Winston-Salem and to clean them out about every two weeks. If a big rain fell, he went through them the next day. He could walk through the 54-inch drainpipe installed by Liberty Storage Company. When he went through these pipes, he had a flashlight. He never found anything wrong with the drainage pipes underneath the building occupied by Levy or the buildings occupied by plaintiff. He went through the drainpipes from 4th Street to Brookstown Avenue hundreds of times and he never saw any holes in, or anything wrong with, the pipes. It never was broken when he went through.

Inside the Levy building owned by Liberty Storage Company was a concrete area about 10 or 12 feet square, and in the middle of this was a manhole installed by Liberty Storage Company, as above set forth. Over this manhole was a lid with four 1½-inch or 2-inch holes. Prior to 26 May 1960, if there was a very heavy rain, Levy found about two inches of water in the bottom area of the building. He placed above the manhole a 4 x 4 plank which extended to the ceiling, and had it wedged in to keep the manhole down. In the fall or spring of 1959 water came up out of the drain with such force that it knocked the manhole cover off and there was water on the bottom area of the building. As a result of contact by him, several inspectors from the city came to the building and inspected the manhole. He was told to contact the owners of the building. Later, employees of defendant bolted the manhole cover down and sealed the holes.

Between 1957 and 26 May 1960 there was no flooding or water trouble in the parts of the buildings leased by plaintiff. On the night of 26 May 1960 in the city of Winston-Salem there was a heavy rainstorm for a short duration, followed by a normal rainfall. That night the corrugated metal pipes installed by Liberty Storage Company, over which it had erected buildings leased in part to plaintiff, collapsed. Robert W. Neilson testified for plaintiff as follows:

"When I went down there I found the corrugated metal pipe in this area had collapsed. By 'this area' I mean this southern part of the building occupied by Hormel, the first part of it. This part of the building is on columns above the stream level or pipe level, with no basement in it, floors above it, and this pipe had collapsed, and one joint had curled up and washed through the culvert and landed in the open stream just south of Brookstown Avenue. The other pipes were crushed and blocking the drainageway in this area. Including the section that went down through the Winston-Salem Southbound Railway culvert and the other sections I found collapsed there under the building, there were three sections involved there; I believe those sections were about 10-foot lengths. I checked the date on one of those sections; it had a metal date stamped on the pipe with the name 'Armco, 1925.' Armco was the name of the company that manufactured the pipe."

As a result of the collapse of the galvanized metal pipes, water waist high flooded the lower part of the building occupied by plaintiff, which caused damage to its property there stored in an alleged amount of over $25,000.

Robert W. Neilson testified in substance: After the flooding of the premises occupied by plaintiff, he went there and saw the rusted-out

places in the pipes which Liberty Storage Company had installed on its premises. As a rule, the bottom of the pipes would corrode first. Where these pipes had rusted-out holes, dirt would wash up between these holes to some extent. When there are holes like the picture shows, they would be visible to one on the inside of the pipes, provided there was no water or dirt covering them up. The deterioration he saw in the pipes might happen in 25 years, and the pipes might last 50 years.

C. H. Cherry, branch manager of plaintiff in May 1960, testified: "Yes, sir; in my opinion the drain was overloaded. The water that actually did the damage came from not that drain but from the street above the drain. * * * The drain did not give way until after we had 47 inches of water in the building."

Plaintiff introduced in evidence a part of defendant's answer reading: "* * * it is admitted that on or about the 26th day of May, 1960, during a rain, the drain pipe under the building occupied by the plaintiff became clogged up, causing the premises occupied by the plaintiff to be flooded."

Our task in stating the essential facts necessary to a decision of this appeal has been laborious and difficult by reason of the fact that plaintiff's witnesses testified in great detail as to the drainage of water into Old Tar Branch and referred to maps, but there is nothing in the record to identify what maps the witnesses were referring to. Three large maps of this area have been brought forward on appeal, and it has been most laborious to determine the map or maps the witnesses were referring to. The witnesses refer to photographs. These photographs are not before us.

Plaintiff in its complaint alleges a cause of action based on installation by the city of Winston-Salem, or its predecessor the city of Winston or the town of Salem, of metal drainage pipes for surface waters upon and through the premises owned by Liberty Storage Company and afterwards leased by this company to plaintiff; inspection and repair of these drainage pipes by defendant; the deterioration of these pipes prior to 1958 and temporary repair of them by defendant; negligent failure by defendant to repair or replace these pipes, after they had become defective to the knowledge, actual or constructive, of defendant; channeling of more surface waters into these drainage pipes than they could carry by reason of their defective condition; and that because of such negligence on 26 May 1960 during a rain the drainage pipes collapsed and earth fell in them blocking the flow of water, and water burst out and damaged plaintiff's property.

In *Vickers v. Russell*, 253 N.C. 394, 117 S.E. 2d 45, the Court said: "A plaintiff must make out his case *secundum allegata*. He cannot re-

cover except on the case made by his pleading. Proof without allegation is no better than allegation without proof."

Plaintiff cannot invoke the application of the general rule that a municipality is liable for damages caused by its negligence in the maintenance and repair of its sewers and drains constructed by it (63 C.J.S., Municipal Corporations, § 876(c); 38 Am. Jur., Municipal Corporations, § 636; McQuillin, Municipal Corporations, 3d Ed., Vol. 18, § 53.118), which is the cause of action it has alleged in its complaint, for the simple reason that all its proof is that the drainage pipes which collapsed causing its damage were not only constructed and installed by an individual, Liberty Storage Company, on its own property, but were actually under the control of Liberty Storage Company. Further, plaintiff cannot invoke the application of the general rule that municipal adoption and control of drainage culverts or pipes complained of, constructed or owned by an individual, is sufficient to render the municipality liable for defects or obstructions therein (63 C.J.S., Municipal Corporations, § 877; 38 Am. Jur., Municipal Corporations, § 636), for the reason that it has neither allegation nor proof to call this rule of law into play. The mere fact, as shown by plaintiff's evidence, that defendant in the Levy building bolted the manhole down of Liberty Storage Company's private drainage line and sealed the holes therein, and that defendant regularly sent an employee through the private drainage system of Liberty Storage Company to see that it was open and waters could leave its streets did not constitute municipal adoption and control of Liberty Storage Company's private drainage system on its premises. This is said in 63 C.J.S., *ibid,* p. 261: "Hence, it does not adopt a private sewer or drain merely by cleaning and repairing it or by constructing a drain, manhole, and intake which does not conduct into the sewer any extra water, or by attempting to work out an agreement for the reconstruction of the private drain or sewer." In accord, *City of Irvine v. Smith,* 304 Ky. 868, 202 S.W. 2d 733; *Munn and Barton v. Pittsburgh,* 40 Pa. 364. In the case of *City of Irvine,* the Court of Appeals of Kentucky held that where sewers constructed by the city were placed to catch surface water as it drained naturally, the fact that such culverts and sewers crossing streets were connected with private sewers did not constitute a dedication of private sewers to public use.

In *Johnson v. Winston-Salem,* 239 N.C. 697, 81 S.E. 2d 153, Johnson, J., with clarity and accuracy, said for a unanimous Court:

"[T]he general rule is that a municipality becomes responsible for maintenance, and liable for injuries resulting from a want of due care in respect to upkeep, of drains and culverts constructed

by third persons when, and only when, they are adopted as a part of its drainage system, or the municipality assumes control and management thereof. [Citing authority.] Accordingly, there is no municipal responsibility for maintenance and upkeep of drains and culverts constructed by third persons for their own convenience and the better enjoyment of their property unless such facilities be accepted or controlled in some legal manner by the municipality. * * * Moreover, the fact that a private line of drainage is connected with a municipal culvert under circumstances involving no dedication by the private owner or control by the municipality, ordinarily does not make the latter liable for damages to private property caused by a break in the private line."

Plaintiff relies upon the principle of law stated in *Yowmans v. Hendersonville,* 175 N.C. 574, 96 S.E. 45; and *Eller v. Greensboro,* 190 N.C. 715, 130 S.E. 851, to the effect that a municipality cannot escape liability if it gathers and concentrates surface waters into artificial drains or sewers and turns them on a person's property in such manner and such volume that the injuries complained of were likely to occur and did result under and from such condition. This general rule of law is not relevant here, because plaintiff's complaint alleges no such case. Plaintiff's allegation is that defendant from time to time has channeled more surface waters "into these drain pipes so that the volume of water passing through same was and had been gradually increasing for some time and because of the defective condition of said drain pipes, they were insufficient to take care of surface waters." We are fortified in our opinion that plaintiff's complaint does not allege a cause of action to invoke the application of the principle of law stated in the *Yowmans* and *Eller* cases by reason of the fact that plaintiff filed in this Court on 16 October 1964, and the appeal was set for argument and heard on 21 October 1964, a motion to amend paragraph 9 of its complaint by striking out the words "because of the defective condition of said drain pipes," which paragraph 9 is set forth verbatim above, and by inserting a new paragraph 9½ after paragraph 9 in its complaint, as follows:

"That between the years 1925 and 1929 the Liberty Storage Company had provided sufficient pipe to convey the water then flowing through its said lot without injury thereto or the property thereon. That thereafter, the defendant, City of Winston-Salem, carelessly and negligently, without providing sufficient outlet therefor and in disregard of the duty it owed the said plaintiff and its predecessor in title, collected much greater than the natural quantity of surface water from various parts of the city of Winston-Salem and wrongfully diverted the natural flow of said sur-

face water and drainage and concentrated and collected the said increased flow of water and drainage in artificial drains and thence into and through said property without providing sufficient outlets for its proper outflow, and by reason thereof plaintiff's property has been flooded and its property damaged as herein set out."

Defendant has filed a reply to this motion and opposes it, on the ground it seeks to change the cause of action alleged in the original complaint, and comes too late.

G.S. 1-163 vests in the judge broad discretionary powers to permit amendments to any pleading, process or proceeding either before or after judgment. The Court said in *Perkins v. Langdon*, 233 N.C. 240, 63 S.E. 2d 565: "An analysis of this statute [G.S. 1-163] lends support to the view that the scope of the court's power to allow amendments is broader when dealing with amendments proposed before trial than during or after trial." Under the original complaint, the crucial question is whether the drainage pipes installed by defendant had become defective, and whether defendant had knowledge, actual or constructive, of such defects. Under the proposed amendment, the crucial question is whether defendant collected a much greater flow of surface water than the natural quantity of surface water from various parts of the city of Winston-Salem, and wrongfully diverted the natural flow of such surface water, and concentrated and collected the increase flow of water and drainage into artificial drains and thence into the private drainage system installed by Liberty Storage Company on its premises without providing sufficient outlets for its proper outflow. Plaintiff's proposed amendment sets up a wholly different cause of action or changes substantially the action originally sued upon, and G.S. 1-163 does not permit this to be done five days before the appeal was to be heard in the Supreme Court. The motion is denied. *Perkins v. Langdon, supra; Anderson v. Atkinson*, 235 N.C. 300, 69 S.E. 2d 603; *Electric Co. v. Dennis*, 255 N.C. 64, 120 S.E. 2d 533.

Plaintiff assigns as error the exclusion of testimony of Robert W. Neilson, a registered engineer and director of public works of defendant, to this effect: After the flooding of the premises occupied by plaintiff on 26 May 1960, Liberty Storage Company was concerned with a plan to replace the old pipes installed by it under its buildings occupied by plaintiff. He, at the request of Liberty Storage Company, suggested a plan for Liberty Storage Company to cross the Winston-Salem Southbound Railway Company's right-of-way west of the buildings of Liberty Storage Company, which would bypass its buildings and join in with the railway's culvert. "Our plan showed a 84-inch concrete pipe." Plaintiff's contention is the testimony as to the sug-

gested plan for an 84-inch concrete pipe is competent. The mere fact of this suggested plan furnished by defendant at the request of Liberty Storage Company for a reconstruction of Liberty Storage Company's private drain could impose no liability on defendant, 63 C.J.S., Municipal Corporations, p. 261, and if it had been admitted in evidence, it would not, in the light of plaintiff's allegations and proof, have entitled plaintiff to go to the jury, or changed the result here.

The other assignments of error to the exclusion of and admission of evidence were not prejudicial to plaintiff, when we consider the allegations of its complaint.

Plaintiff introduced in evidence the contract entered into by and between the State Highway and Public Works Commission and defendant in respect to the building through defendant of I-40 Expressway. The provisions of this contract are of no benefit to plaintiff on the case made out by its complaint.

Plaintiff has failed to make out a case by proof of actionable negligence against the city of Winston-Salem according to the allegations of its complaint, which would carry its case to the jury. It is hornbook law that a plaintiff "cannot recover except on the case made by his pleading." *Probata* without *allegata* is insufficient. Both must concur to establish a cause of action. *Aiken v. Sanderford,* 236 N.C. 760, 73 S.E. 2d 911.

The judgment of compulsory nonsuit is
Affirmed.