MILNER HOTELS, INCORPORATED, v. CITY OF RALEIGH, GATEWAY PLAZA, INC., SEBY B. JONES AND ROBERT D. GORHAM.

(Filed 23 November, 1966.)

**Municipal Corporations § 15—  Municipality adopting natural stream as part of its drainage system is under duty to keep it free of obstructions.**

The complaint alleged that defendant municipality drained surface waters from a substantial part of the city into a natural stream and adopted the stream as a part of its storm drainage system, and that the city entered into a contract and agreement with the State Highway Commission to maintain, inspect and repair culverts within its limits and, in compliance therewith, undertook from time to time to clean obstructions from the stream, and that the waters of the stream overflowed plaintiff's property during a storm as a result of the city's failure to clean obstructions from a culvert or to enlarge a culvert. *Held:* The allegations were sufficient to state a cause of action against the municipality, since a municipality which assumes control and maintenance of a drain is under duty to use reasonable care to keep such drain in reasonable repair and free from obstructions.

APPEAL by plaintiff from *Morris, E.J.,* at 1 May, 1966 Non-Jury Term of Wake County Superior Court.

This is a civil action arising out of flood damage to plaintiff's property in the City of Raleigh, on 29 July, 1965. All defendants demurred to plaintiff's complaint. The demurrer of the defendant City of Raleigh was sustained and this is an appeal by the plaintiff from that order.

The plaintiff alleges in substance that Pigeon House Branch is a natural stream or watercourse entirely within the City of Raleigh and flows through plaintiff's property. In July, 1965, and for some time prior thereto, the City of Raleigh utilized said stream to drain the storm and surface drainage by connecting its gutters and street drains with the stream. Some time before 29 July, 1965, the City of Raleigh entered into a contract and agreement with the State Highway Commission to maintain, inspect and repair the streets and culverts within the corporate limits of Raleigh. Under it the City undertook from time to time to perform the promised maintenance under its contract and from time to time through its agents, servants and employees attempted to clear debris and other deposits from Pigeon House Branch, but only after rainstorms had ended and the waters therefrom had subsided.

On various occasions before 29 July, 1965, during rainstorms the waters of Pigeon House Branch overflowed its banks and flooded the property of plaintiff on which it operated a motel. The plaintiff notified the City and on several occasions its employees performed work on the stream, partially removing obstructions.

On 29 July, 1965, a heavy rainstorm occurred and waters from the stream backed up and completely flooded the property of the plaintiff, entering the motel itself, forcing guests therein to evacuate and damaging its property.

Notice of its claim for property damage was filed with the City within the time required by the City charter.

The complaint alleges that the City negligently: Allowed a State highway culvert to become obstructed; took no action to keep it free of obstructions; failed to enlarge the culvert; allowed large amounts of debris to accumulate in the channel of the stream; failed to inspect it and take action until after a rain storm.

The City demurred on the grounds that plaintiff's complaint failed to state a cause of action in that there were not sufficient allegations in the complaint to show that it had any legal duty to perform any of the acts which the complaint alleges that the City failed to perform.

The demurrer was sustained and the plaintiff appealed.

*Young, Moore & Henderson by J. Allen Adams for plaintiff appellant.*

*Paul F. Smith, Donald L. Smith for City of Raleigh, appellee.*

PLESS, J. In *Johnson v. Winston-Salem,* 239 N.C. 697, at p. 707, 81 S.E. 2d 153, which is cited by the Present Chief Justice Parker, in *Hormel & Company v. Winston-Salem,* 263 N.C. 666, at p. 675, 140 S.E. 2d 362, it is said: "The general rule is that a municipality becomes responsible for maintenance, and liable for injuries resulting from a want of due care in respect to upkeep, of drains and culverts constructed by third persons when, and only when, they are adopted as a part of its drainage system, or the municipality assumes control and management thereof." That this is the generally accepted rule is shown by the following excerpt: "The rule as to municipal liability for defects and obstructions in sewers and drains * * * remains the same whether a natural watercourse is adopted for drainage purposes or an artificial channel is built; and, where a municipality has assumed jurisdiction over a stream flowing into the city, it may become liable for injury caused by its negligence in the control of the water. Where a city adopts a natural watercourse for sewerage or drainage purposes, it has the duty to keep it in proper condition and free from obstructions, and it is liable for damage resulting from neglect therein." 63 C.J.S. 262.

The plaintiff specifically alleges that the City "utilized said natural stream or watercourse to drain the storm and surface drain-

age of a substantial part of the center of the City  *  *  *  and had adopted said stream or watercourse as a part of its storm drainage system or sewer".

Further quoting from the *Johnson* case, *supra:* "There is no municipal responsibility for maintenance and upkeep of drains and culverts constructed by third persons for their own convenience and the better enjoyment of their property unless such facilities be accepted or controlled in some legal manner by the municipality."

38 American Jurisprudence, 636 and 637, also states this to be the general rule: "In the application of the principles governing municipal liability for injuries resulting from defects or obstructions in sewers, it is immaterial whether the actual construction of the sewer was done by the municipality or by a private individual, if it is under control of the municipality at the time.

"When, therefore, a municipal corporation assumes the control and management of a sewer or drain which has been constructed in a public street under its supervision, it is bound to use reasonable diligence and care to keep such sewer or drain in good repair, and is liable in damages to any property owner injured by its negligence in this respect.

"The duty of maintaining sewers and drains in good repair includes the obligation to keep them free of obstruction, and a municipality is liable for negligence in its exercise to any person injured by such negligence, whether the damages result from its failure to use reasonable diligence to keep its sewers and drains from becoming clogged, — as where the municipal corporation fails in its duty to exercise a reasonable degree of watchfulness to ascertain the condition of sewers and drains from time to time so as to prevent them from becoming obstructed."

The complaint brings this case within the above rule when it alleges that the City "entered into a contract and agreement with the State Highway Commission to maintain, inspect and repair the streets and culverts within the corporate limits of the City"  *  *  * and "undertook from time to time to perform the promised maintenance under its contract."

The demurrer should have been overruled.

Reversed.

BOBBITT, J., concurs in result.