GERALDINE B. HOWELL, Plaintiff-Appellee v. THE CITY OF LUMBERTON, Defendant-Appellant

No. COA00-310

(Filed 17 July 2001)

**1. Cities and Towns— municipality's improper maintenance of storm drainage pipe—no preemption by inverse condemnation statute**

The trial court did not err by failing to grant defendant municipality's motion for involuntary dismissal on plaintiff's negligence claim arising out of defendant's improper maintenance of a storm drainage pipe running under plaintiff's property even though defendant contends the claim is preempted by the inverse condemnation statute of N.C.G.S. § 40A-51, because: (1) the inverse condemnation statute under N.C.G.S. § 40A-51 specifically provides that it does not affect an owner's common law right to bring an action in tort for damage to an owner's property; and (2) North Carolina cases have only concluded there was no common law action in trespass or nuisance available to plaintiffs that could be preserved by N.C.G.S. § 40A-51.

**2. Cities and Towns— municipality's improper maintenance of storm drainage pipe—not a continuing and permanent trespass and nuisance**

The trial court did not err by failing to grant defendant municipality's motion for involuntary dismissal on plaintiff's negligence claim arising out of defendant's improper maintenance of a storm drainage pipe running under plaintiff's property even though defendant contends plaintiff's claim should be characterized as a continuing and permanent trespass and nuisance making it an inverse condemnation action under N.C.G.S. § 40A-51, because: (1) plaintiff is not seeking to recover for the general loss of value to her property due to the continual and ongoing effects of the location of the pipe, but instead seeks to recover for the specific damage to her house caused by the large sinkhole in September 1994; (2) plaintiff may bring an action in negligence even if the damage to her house occurred over the course of the sinkhole activity; and (3) defendant's contention that it should not be liable for any damages based on the fact the sinkholes occurred within defendant's easement is incorrect when plaintiff alleges damage to her house, most of which extends far beyond the easement.

**3. Cities and Towns— municipality's improper maintenance of storm drainage pipe—duty of reasonable care**

Although defendant municipality contends that plaintiff failed to meet her burden of proof in a negligence action to show that defendant municipality willfully or wantonly injured plaintiff based on the fact that the addition to plaintiff's house is built over the storm drainage pipe, thereby encroaching on defendant's easement and making plaintiff a trespasser, defendant owed plaintiff the standard duty of reasonable care because defendant's issuance to plaintiff of a building permit to construct the addition where it now stands transforms plaintiff, at the very least, into a licensee.

**4. Cities and Towns— municipality's improper maintenance of storm drainage pipe—foreseeability—breach of duty**

The trial court did not err in a negligence action by concluding that defendant municipality's improper maintenance of a storm drainage pipe running under plaintiff's property made it foreseeable that a sinkhole would damage plaintiff's house and that defendant breached its duty to maintain the storm pipe, because: (1) the 1992 report from defendant's director of its Public Works Department to defendant's city manager indicates that defendant did foresee this damage; (2) even though advance notice has not been required to find negligence in the maintenance of storm drain systems, defendant had actual notice of the defective pipe beginning with the first sinkhole in 1981; and (3) defendant could have prevented the damage to plaintiff's house by removing and relocating the pipe, and the mere fact that such a solution might be difficult or expensive does not relieve defendant of its duty of due care.

**5. Statute of Limitations— negligence—municipality's improper maintenance of a storm drainage pipe**

A plaintiff's negligence claim based on defendant municipality's improper maintenance of a storm drainage pipe running under plaintiff's property is not barred by the three-year statute of limitations under N.C.G.S. § 1-52 even though the first sinkhole occurred in 1981, plaintiff discovered the damage to her house in September 1994, and plaintiff filed her complaint in February 1997, because: (1) the statute of limitations began to run when plaintiff discovered the damage to her house since plaintiff is seeking to recover for damage to her house and not for damage

to her property in general; and (2) defendants make no allegation that the damage to plaintiff's house ought reasonably to have been apparent at the time the first sinkhole occurred in 1981 or at any other time before the damage was in fact discovered.

Appeal by defendant from judgment entered 21 December 1998 by Judge Carl L. Tilghman in Robeson County Superior Court. Heard in the Court of Appeals 24 January 2001.

*McCoy, Weaver, Wiggins, Cleveland & Raper, by Richard M. Wiggins, for plaintiff-appellee.*

*Faison & Gillespie, by Reginald B. Gillespie, Jr., for defendant-appellant.*

McGEE, Judge.

Plaintiff filed this action in February 1997, seeking recovery for damages to her house allegedly due to defendant's negligence in maintaining a storm drainage pipe running under plaintiff's property. The case was heard before the trial court without a jury. During trial, defendant moved for involuntary dismissal, and the trial court denied the motion. The trial court granted judgment in favor of plaintiff on 21 December 1998. Defendant appeals. Because defendant does not challenge the trial court's findings of fact on appeal, we must presume the findings of fact to be correct. *See Inspirational Network, Inc. v. Combs*, 131 N.C. App. 231, 235, 506 S.E.2d 754, 758 (1998).

Between 1948 and 1954, a thirty-six inch storm drain pipe was installed in what was originally an open drainage ditch on the property later owned by plaintiff. The pipe is located approximately ten feet from the west property line and runs across the property parallel to the property line. As part of defendant's storm water drainage system, defendant owns the pipe and the easement in which the pipe is located. However, defendant acquired no written easement for the installation of the pipe, and no written easement appears of record in the Office of the Robeson County Register of Deeds showing the location, nature, or extent of defendant's easement in which the pipe is located.

The storm drain pipe joints were sealed with oakum, a flexible material consisting of hemp saturated with concrete. At the time the pipe was installed, and until the early 1970's, oakum was widely used and was considered state-of-the-art for sealing such pipe joints. In the

1970's, however, defendant and others learned that oakum can deteriorate over time, allowing water to access the pipe, which can result in a sinkhole. Oakum deterioration is a natural process which cannot be prevented, and no test, process or machine can predict when failure will occur. By the mid-1970's, defendant had begun using a petroleum-based sealant known as Ramneck in the installation and repair of storm drain pipe joints.

A house was built on the property in 1961 and was bought by Jimmy D. Howell. The west wall of the house was situated approximately fifteen feet east of the pipe. The pipe was buried three to six feet under the surface and was not visible, though catch basins were located in the streets in front of and behind the house. Jimmy Howell was informed of and shown the location of the pipe at the time of purchase.

Plaintiff married Jimmy Howell in 1967 and plaintiff and Jimmy Howell obtained a building permit from defendant's inspection department in 1977 to build a fifteen foot by twenty-two foot room onto the west side of the house. The chimney and west wall of the addition were built above the pipe. When plaintiff and Jimmy Howell divorced in 1989, plaintiff became the sole owner of the property. At the time she became owner, plaintiff was not aware that the pipe was located on her property.

In 1981, while getting wood from a woodpile in the backyard, Jimmy Howell fell into a sinkhole when the ground beneath him collapsed some fifteen feet behind the house. Plaintiff notified defendant of the problem, and defendant sent a crew which dug up the ground and exposed the pipe under the sinkhole. The crew applied concrete to the seal of the joint and replaced soil that had been washed away though the sinkhole. No further sinkholes appeared at that location.

Plaintiff notified defendant of another sinkhole on her property in 1988. Defendant's practice at that time, upon being notified of a sinkhole in or near one of its storm drain lines, was to expose the pipe and repair any observed or suspected pipe failure. Defendant's work crew put dirt in the hole but did not expose the pipe to determine whether another oakum seal had deteriorated. No further sinkholes appeared at that location.

Plaintiff reported another sinkhole in 1989 on the right-of-way of the street in front of plaintiff's property. Defendant's crew filled the

sinkhole with sand and concrete. No further sinkholes appeared at that location.

The director of defendant's Public Works Department reported to defendant's city manager in 1992 that, based on the history of occurrences of sinkholes on plaintiff's property, funds should be appropriated to move the storm drain pipe since it ran under plaintiff's property at or near the west wall of her residence. However, no funds were appropriated by defendant to move the pipe.

Plaintiff notified defendant of another sinkhole on her property in 1993. Defendant's crew filled the hole with sand but did not expose the pipe. No further sinkholes appeared at that location.

Plaintiff discovered a severe sinkhole on her property in September 1994, measuring some thirty-six inches in diameter and four to five feet deep. Plaintiff also discovered signs that her house was suffering damage from settlement. The 1977 addition had begun to pull away from the remainder of the house, cracks appeared in the brick veneer, and the floors became unlevel, making it difficult to open and close doors.

Defendant's representative from its Public Works Department indicated to plaintiff that the sinkhole was too close to plaintiff's house to safely dig around the pipe at the location of the sinkhole. Instead, defendant offered in June 1995 to remove the portions of the storm drain pipe not under plaintiff's addition and to fill and seal the remaining portions with concrete. Defendant also offered to make cosmetic repairs to plaintiff's house, in return for an easement to reroute the pipe and a release from liability. Plaintiff considered the offer inadequate and refused to sign the release.

I.

[1] Defendant first assigns error to the trial court's failure to grant defendant's motion for involuntary dismissal during the trial. Defendant asserts that plaintiff's purported negligence claim is preempted by N.C. Gen. Stat. § 40A-51, North Carolina's inverse condemnation statute.

Although N.C.G.S. § 40A-51(c) (1999) specifically provides that "[n]othing in this section shall in any manner affect an owner's common-law right to bring an action in tort for damage to his property[,]" defendant contends that the language is sharply limited by *Smith v. City of Charlotte*, 79 N.C. App. 517, 339 S.E.2d 844 (1986), *McAdoo v.*

*City of Greensboro*, 91 N.C. App. 570, 372 S.E.2d 742 (1988), and *Ashley Park Charlotte Assoc. v. Charlotte, N.C.*, 827 F.Supp. 1223 (W.D.N.C. 1993). In *Smith*, this Court acknowledged that the plaintiffs had no "private common law actions for damages in trespass or nuisance in municipal airport overflight cases; their sole remedy is inverse condemnation" under N.C.G.S. § 40A-51. *Smith* at 521, 339 S.E.2d at 847 (citation omitted). In *McAdoo*, this Court affirmed summary judgment for the defendant municipality on the plaintiff's claim of trespass. The Court held that because the defendant had the power of eminent domain it was immune from common-law claims for trespass and thus N.C.G.S. § 40A-51(c) did not apply. *See McAdoo* at 573, 372 S.E.2d at 744.

In *Ashley*, the plaintiff sought to recover from the defendant municipality when the plaintiff discovered that its property had been contaminated by an adjoining landfill. The U.S. District Court for the Western District of North Carolina, citing *Smith* and *McAdoo*, granted summary judgment under N.C.G.S. § 40A-51 on the plaintiff's common-law claims for nuisance, trespass and negligence. *Ashley*, 827 F.Supp. at 1226. Defendants argue that, under *Ashley's* interpretation of *Smith* and *McAdoo*, N.C.G.S. § 40A-51(c) does not allow plaintiff to bring a common-law negligence claim in the present case.

However, neither *Smith* nor *McAdoo* addressed a claim of negligence. Moreover, neither recognized any limitation to N.C.G.S. § 40A-51(c). Instead, *Smith* and *McAdoo* concluded that there was no common-law action in trespass or nuisance available to the plaintiffs that could be preserved by N.C.G.S. § 40A-51(c). We therefore hold that, if a common-law action for negligence by defendant would otherwise be available to plaintiff, it is preserved under N.C.G.S. § 40A-51(c) and not preempted by the inverse condemnation statute. Insofar as *Ashley* implies otherwise, *Ashley* has incorrectly interpreted North Carolina law.

[2] Defendant next contends that plaintiff's claim should be characterized not as negligence but as a continuing and permanent trespass and nuisance, and therefore as an inverse condemnation action within N.C.G.S. § 40A-51. Defendant distinguishes *Hotels, Inc. v. Raleigh*, 268 N.C. 535, 151 S.E.2d 35 (1966), (property damage due to storm water overflow), *Tent Co. v. Winston-Salem*, 271 N.C. 715, 157 S.E.2d 577 (1967) (property damage due to storm water overflow), and *Pulliam v. City of Greensboro*, 103 N.C. App. 748, 407 S.E.2d 567 (1991) (property damage due to sewage overflow) as each involving a single incident of harm, while describing plaintiff's claim as "based

on the continual and ongoing effects of the location and use of the [p]ipe—a permanent physical structure under the [a]ddition." Defendant further distinguishes these cases, as well as *Hooper v. City of Wilmington*, 42 N.C. App. 548, 257 S.E.2d 142, *disc. review denied*, 298 N.C. 568, 261 S.E.2d 122 (1979) (loss of property through erosion by storm water), as involving damage to real property occurring *outside* the defendant municipality's easement.

Plaintiff, however, is not seeking to recover for the general loss of value to her property due to the "continual and ongoing effects of the location of the pipe." Instead, plaintiff seeks to recover for the specific damage to her house caused by, or at least discovered in conjunction with, the large sinkhole of September 1994. In *Hotels*, the defendant municipality used a stream running through the plaintiff's property for storm drainage. On several occasions prior to 29 July 1965, rain caused the stream to overflow onto the plaintiff's land. Upon notification by the plaintiff, the defendant would work to remove obstructions from the stream. On 29 July 1965, however, the stream overflowed enough to enter the plaintiff's motel and damage the plaintiff's property. Our Supreme Court held that the defendant could be held liable for negligent breach of its duty to keep its sewers and drains free of obstructions which might cause such flooding. *Hotels*, 268 N.C. at 537, 151 S.E.2d at 37. Similarly, although plaintiff reported numerous sinkholes before September 1994, it was not until the sinkhole of September 1994 that plaintiff discovered the damage to her home.

Moreover, plaintiff may bring an action in negligence even if the damage to her house occurred over the course of the sinkhole activity. In *Hooper*, the plaintiffs sued the defendant municipality for damage to their property due to erosion of the drainage ditch running alongside their property. The plaintiffs asserted that the erosion was due to the amount and velocity of water running through the ditch from the defendant's drainage system. This Court affirmed the trial court's award of damages for the erosion occurring over the previous three years. It follows that, even if plaintiff's damage has been caused by the continual and ongoing occurrence of sinkholes, plaintiff may still recover under negligence for all of her damages within the appropriate statute of limitations.

We dismiss defendant's assertion that, because the sinkholes occurred within defendant's easement, defendant cannot be liable for any damage caused by them. Putting aside the question of whether defendant could be liable for damage occurring within its own ease-

ment, we note that plaintiff alleges damage to her house, most of which extends far beyond the easement. We see little distinction between damage due to flood waters rising out of a defendant's easement and damage due to earth sinking within a defendant's easement.

We therefore find no error in the trial court's denial of defendant's motion for involuntary dismissal. We hold that plaintiff has legitimately characterized her claim as an action in negligence, and that N.C.G.S. § 40A-51 does not preempt that negligence action.

## II.

**[3]** Defendant next asserts that plaintiff failed to meet her burden of proof that defendant willfully or wantonly injured plaintiff. Defendant argues that because defendant owns the pipe and the easement in which it is located and because the addition to plaintiff's house is built over the pipe thereby encroaching on defendant's easement, plaintiff should be considered and treated as a trespasser on defendant's easement. Defendant would owe a trespasser only a duty not to willfully or wantonly injure the trespasser. *See Nelson v. Freeland*, 349 N.C. 615, 632, 507 S.E.2d 882, 892 (1998).

The extent of defendant's easement, however, is unknown. Although plaintiff and defendant stipulated before trial that defendant "owns the [p]ipe and the easement in which the [p]ipe is located[,]" no written record of the easement exists. The trial court found that the west wall of plaintiff's addition was located over the pipe, but it did not actually find that plaintiff had encroached upon defendant's easement.

Nonetheless, we need not determine whether plaintiff's addition was built within defendant's easement. We hold that defendant's issuance to plaintiff of a building permit to construct the addition where it now stands transforms plaintiff, at the very least, into a licensee. It follows that, regardless of the relation between plaintiff's addition and defendant's easement, defendant owes plaintiff the standard duty of reasonable care. *See Nelson* at 632, 507 S.E.2d at 892.

## III.

**[4]** Defendant further argues that plaintiff has failed to demonstrate negligence on the part of defendant. Defendant asserts that, because oakum deterioration is a natural and unpredictable process which

cannot be prevented, defendant could not have foreseen the sinkhole which damaged plaintiff's house and could not have done anything to prevent it anyway.

To demonstrate negligence, plaintiff must show the trial court that defendant owed plaintiff a duty of care; that defendant breached its duty; that the breach was the actual and proximate cause of plaintiff's injury; and that plaintiff suffered damage due to the injury. *See Pulliam, supra*, at 754, 407 S.E.2d at 570.

> "The general rule is that a municipality becomes responsible for maintenance, and liable for injuries resulting from a want of due care in respect to upkeep, of drains and culverts constructed by third persons when, and only when, they are adopted as a part of its drainage system, or the municipality assumes control and management thereof."

*Hotels, supra*, at 536, 151 S.E.2d at 37 (citation omitted). In the present case, plaintiff and defendant agree that the storm drain pipe is a part of defendant's drainage system.

Defendant contends that, insofar as it had a duty to maintain the storm drain pipe beneath plaintiff's property, it did not breach its duty. Defendant first asserts that the September 1994 sinkhole that damaged plaintiff's house was unforeseeable, and therefore that defendant cannot be held liable for the damage. Plaintiff counters that, even if the occurrence of the September 1994 sinkhole itself could not be predicted, by September 1994 defendant could foresee further sinkholes appearing on plaintiff's property which might cause damage to plaintiff's house. In fact, the 1992 report from defendant's director of its Public Works Department to defendant's city manager indicates that defendant did foresee just such damage.

Defendant argues that under *Mosseller v. Asheville*, 267 N.C. 104, 147 S.E.2d 558 (1966), defendant cannot be held liable for damages due to the pipe defect causing the September 1994 sinkhole if it had notice only of other, prior defects or only of conditions likely to produce the September 1994 defect. *See id.* at 111, 147 S.E.2d at 563. *Mosseller*, however, addresses injuries due to street or sidewalk defects, for which the municipality may be held liable only after having actual or constructive notice of the defect. *See id.* at 108, 147 S.E.2d at 561. *Mosseller* explicitly did not involve damage to another's property, *see id.*, and advance notice has not been required to find negligence in the maintenance of storm drain systems. *See, e.g.,*

*Hotels* (no allegation that defendant municipality had notice of specific obstructions prior to flooding). Moreover, insofar as the defect in the present case was the failure of oakum seals throughout the storm drain pipe under plaintiff's property, defendant *had* actual notice of the defective pipe beginning with the first sinkhole in 1981.

Defendant next asserts that it did not breach its duty to maintain the storm drain pipe because it had no way to prevent the oakum seals from failing and no way to access the pipe beneath the addition once the September 1994 sinkhole appeared. However, while it may have been impossible to prevent individual seals from failing, defendant could have prevented the damage to plaintiff's house by removing and relocating the pipe. Defendant's director of its Public Works Department recommended the allocation of funds for such a relocation in 1992, and in June 1995 defendant actually offered to perform such a relocation. The mere fact that such a solution might be difficult or expensive does not relieve defendant of its duty of due care in maintaining its storm drain pipe in such a way as to prevent injury to plaintiff. *See, e.g., Hooper, supra* (the defendant municipality's rejection of various methods to prevent erosion did not eliminate the municipality's liability for erosion).

Defendant does not challenge the trial court's conclusion that the failure of the oakum seals and their associated sinkholes caused plaintiff's damage, nor does defendant challenge the trial court's damage award to plaintiff. We hold that plaintiff has adequately demonstrated that defendant owed plaintiff a duty, and that defendant breached that duty. We therefore find no error in the trial court's holding that defendant was negligent.

IV.

**[5]** Finally, defendant asserts that plaintiff's negligence claim is barred by the three-year statute of limitations in N.C. Gen. Stat. § 1-52. In particular, defendant cites N.C.G.S. § 1-52(3) (1999), which provides a statute of limitations of three years "[f]or trespass upon real property. When the trespass is a continuing one, the action shall be commenced within three years from the original trespass, and not thereafter." *See also,* N.C.G.S. § 1-52(5) (applying the three-year statute of limitations to other tort actions). Defendant argues that, because the first sinkhole appeared in 1981, the statute of limitations on plaintiff's claim began running then.

Defendant cites *Robertson v. City of High Point,* 129 N.C. App. 88, 497 S.E.2d 300, *disc. review denied,* 348 N.C. 500, 510 S.E.2d 654 (1998) in support of its contention that the statute of limitations on plaintiff's claim has expired. In *Robertson,* the plaintiffs brought suit against the defendant municipality for its creation and use of a nearby landfill for more than three years. The plaintiffs' complaint included claims of trespass, nuisance, and negligence. This Court affirmed the trial court's dismissal of those claims, holding that the plaintiffs' cause of action had accrued at the creation of the landfill more than three years before the plaintiffs filed their complaint.

Plaintiff counters that her action for recovery of damage to her house did not accrue until the damage was discovered. N.C.G.S. § 1-52(16) (1999) provides a three-year statute of limitations for "physical damage to claimant's property, the cause of action . . . shall not accrue until . . . physical damage to his property becomes apparent or ought reasonably to have become apparent to the claimant[.]" Plaintiff discovered the damage to her house in September 1994, and filed her complaint in February 1997, less than three years later.

We hold that, because plaintiff is seeking to recover for damage to her house and not for damage to her property in general, the statute of limitations on her action began with her discovery of the damage to her house. Unlike *Robertson,* plaintiff in the present case filed her complaint within three years of discovering the damage alleged. Defendants make no allegation that the damage to plaintiff's home, discovered in September 1994, ought reasonably to have been apparent at the time the first sinkhole occurred in 1981, or at any other time before the damage was in fact discovered.

Plaintiff filed her action within the appropriate statute of limitations, plaintiff adequately demonstrated defendant's negligence to the trial court, and plaintiff's negligence claim is not preempted by N.C.G.S. § 40A-51. We therefore affirm the trial court's judgment in favor of plaintiff.

Affirmed.

Judges WYNN and JOHN concur.