DIZE AWNING AND TENT COMPANY v. CITY OF WINSTON-SALEM.

(Filed 8 November, 1967.)

1. Jury § 5;   Trial § 18—
      Where there is no motion for judgment on the pleadings and the parties stipulate facts in addition to those alleged in the pleadings, the court is without power to make further findings of fact, and when the facts alleged and stipulated, considered in the light most favorable to plaintiff, are insufficient to support nonsuit, the court must submit determinative issues to the jury.

2. Municipal Corporations § 15—
      Where a city revises and enlarges an existing culvert for surface waters, including waters from a natural watercourse, it assumes control and management of the drains and is required to use reasonable diligence to

keep the drains in good repair and condition, and may be held liable for damage resulting from its negligent failure to do so.

**3. Same— Allegations and stipulations held to raise issues of negligence and contributory negligence in maintenance of drains for surface waters.**

The allegations and stipulations were to the effect that defendant municipality took over the drainage of a natural watercourse and enlarged the culvert carrying the drainage water without providing covers, grilles or other protective devices to prevent entry into the said culvert of items of debris of large size, that under plaintiff's property the water was carried by two smaller culverts which were too small to carry the large pieces of debris washed into the drains from upstream so that the debris clogged the drains, resulting in the flooding of plaintiff's premises. *Held:* The allegations and stipulations state a cause of action, and the dismissal of the action by the court without the submission of the issues to the jury must be held error, it being for the jury to hear the evidence and determine therefrom the question of the municipality's negligence, and the question of plaintiff's contributory negligence in constructing smaller culverts under its building.

APPEAL by plaintiff from *Gambill, J.,* 17 April 1967, Civil Session, FORSYTH Superior Court.

The plaintiff alleged that it was engaged in the manufacture, sale and storage of tents, canvas products, awnings, blinds, tarpaulins and other related items; that the building in which it operates its business is on the west side of South Main Street in Winston-Salem and approximately 150 feet downstream from where South Creek empties its drainage into a culvert. The original culvert was 30 inches in diameter running to a manhole, and from there the drainage was carried in a 36-inch pipe to a catch basin just south of plaintiff's premises; from this basin, the drainage was carried under plaintiff's building in two pipes, 30 inches and 18 inches in diameter, the 30-inch pipe changing to 36 inches as it traversed the plaintiff's property.

Prior to 28 May 1963, the pipes and culvert "were so constructed and maintained with covers, grilles or other protective devices so as to prevent the entry into said system (the drainage) of any items of debris of a size which could block the said two smaller pipes leading under plaintiff's premises."

In 1960 the "defendant tore up South Main Street and removed the old culvert or drain pipe of 30 inches diameter and replaced it with [a] 42-inch diameter culvert or pipe and in the process of such replacement work connected the new 42-inch pipe into said manhole." It failed to install a grille or other protective device across or about the opening, letting tires, logs, tree stumps, planks and miscellaneous debris of large size into the 42-inch culvert and into

and through the manhole and the 36-inch pipe which blocked and clogged the pipes under plaintiff's building.

On 28 May 1963 a rain caused bulky debris such as tires, planks, wire, stumps, etc., to flow through the 42-inch pipe through the manhole into the 36-inch pipe to a point just before the start of the two smaller drain pipes under the plaintiff's premises. They were too large to pass through either of the pipes, so they jammed, blocked and dammed the openings, causing the rain water to back up and overflow onto plaintiff's property, flooding the basement and work areas to a depth of two feet. Plaintiff further alleges that its basement was used as a manufacturing, finishing and storage area in which stores of raw materials, finished products, machinery, building equipment and supplies were stored; that the drainage water was dirty and muddy and ruined and coated with mud and dirt its materials; and that this muddy, gritty water got into its machinery and tools, causing it a loss of $75,000.00.

Plaintiff alleges some thirteen elements of negligence which may be summarized as follows: That it was negligent in constructing a 42-inch culvert to carry drainage into smaller sets of pipes and drains which would overload the latter; that it failed to use grilles or other devices to prevent bulky items of trash coming into the drainage system; that it failed to inspect the culvert or to clean and remove debris from it; and that it violated several ordinances of the City of Winston-Salem in its action.

In its answer, the defendant said that before the plaintiff's building was erected, South Creek flowed through the property in an open ditch or channel; that the then owners of the property installed a 36-inch culvert upstream from plaintiff's property and continued downstream almost to the plaintiff's present building; that the plaintiff installed two drain pipes under its premises and then constructed its building over this culvert; that in 1960 the 36-inch metal culvert had become rusted and worn out and that the City replaced it with a 42-inch concrete culvert together with two catch basins to carry the natural surface flow of water. It alleged that the plaintiff was negligent in using two parallel pipes 30 and 18 inches in diameter to carry the water under its building when it knew that the upstream pipe was 36 inches and that the smaller pipes could not carry the same quantity of water or debris which might be washed downstream during heavy rains; that following a rain in 1961 the City advised the plaintiff that its pipes were not adequate to handle heavy rains and that the plaintiff should have inspected the open ditch upstream to insure against the accumulation of debris. The defendant further claimed that by the above acts the plaintiff assumed the risk of any damage by flooding.

The case was set for trial at the April 1967 Session which was a two-weeks term for the trial of civil cases. From the "organization of court" in the case on appeal it is said "that the action of *Dize Awning and Tent Company vs. City of Winston-Salem* came on for trial by jury but at said term was heard before Robert M. Gambill, Judge Presiding, in Chambers, and that judgment was entered as appears in this transcript of record."

The transcript of proceedings shows:

> "Proceedings held in Chambers in the Forsyth County Court-house at Winston-Salem, North Carolina, April 26, 1967, before:
>
> "Hon. ROBERT M. GAMBILL, Judge Presiding.
>
> "APPEARANCES: (naming the attorneys)
>
> "The parties, Plaintiff and Defendant, STIPULATE that the following listed exhibits may be introduced, if otherwise relevant, without the necessity of further identification:"

Here a number of maps, letters, photographs are stipulated.

The parties also made stipulations that the property generally within the watershed of the branch was annexed by the City in 1919; that the watercourse was a natural watercourse; that the 42-inch culvert constructed by the City emptied into a manhole and that the drainage system northwardly from it was privately constructed and owned; that the plaintiff's culverts under its property started at a point approximately 150 feet north (above) of the manhole; that the culvert between it and the plaintiff's culverts is a 36-inch culvert.

The stipulations were made in what was apparently a pre-trial conference called by the Court "to consider the pleadings, settlement of issues, motions to strike and to amend pleadings and possible stipulations; upon consideration of the plaintiff's pleadings and the stipulations of fact agreed upon by the parties, the Court is of the opinion and holds as a matter of law that the plaintiff is not entitled to recover of the defendant in this action."

The Court then in a lengthy written ruling analyzed the pleadings and dismissed the case.

The plaintiff excepted (1) to the attempt of the Court to rule upon issues of law in the absence of any motion or demurrer, written or oral; (2) in the absence of any waiver of trial by jury in attempting to try and determine issues of fact; (3) to the refusal of the Court to accept plaintiff's tender of additional evidence to be placed before a jury; (4) to the denial of the Court to grant a trial by jury and because of errors committed during the progress of the

preliminary conferences; and (5) to certain recitations contained in the judgment in that they are not based upon any evidence before the Court, and to the signing of the judgment, the plaintiff thereupon appealed.

*Deal, Hutchins and Minor by William K. Davis and John M. Minor, Attorneys for plaintiff appellant.*

*Womble, Carlyle, Sandridge & Rice by W. F. Womble and I. E. Carlyle, Attorneys for defendant appellee.*

Pless, J.   The plaintiffs complain that in the procedure used by Judge Gambill he gave judgment on the pleadings, considering also the stipulations of the parties. It is true that "[o]n a motion for judgment on the pleadings, the presiding judge should consider the pleadings, and nothing else . . . He should not hear extrinsic evidence, or make findings of fact . . ." *Remsen v. Edwards,* 236 N.C. 427, 72 S.E. 2d 879. However, the record does not show a motion for judgment on the pleadings, and Judge Gambill is careful to say that the Court conducted "a preliminary conference . . . to consider the pleadings, settlement of issues, motions to strike and to amend pleadings and possible stipulations; upon consideration of the plaintiff's pleadings and the stipulations of fact agreed upon by the parties, the Court is of the opinion and holds as a matter of law that the plaintiff is not entitled to recover of the defendant in this action. . . . [U]pon the plaintiff's pleadings and the stipulations of fact, It Is Ordered, Adjudged and Decreed that the plaintiff shall have and recover nothing . . ."

The record does not show a motion for judgment on the pleadings, nor is it so designated.

We think the procedure used by Judge Gambill comes within the rule tersely stated by Parker, J. (now C.J.) in *Jamison v. Charlotte,* 239 N.C. 682, 80 S.E. 2d 904:

> "It is passing strange that plaintiff's counsel 'objects and excepts to each finding of fact embodied in the judgment,' when each fact found by the Judge was either alleged in the Complaint, which they signed, and was admitted in the defendants' Answer, or copied verbatim from a stipulation and agreement of facts which they and the defendants' counsel signed."

In these days of crowded calendars, over-worked courts and too little time to do so much, we would encourage any efficient and justified method which arrives at the proper result, while giving to all parties a full day in court.

Although the plaintiff was insisting upon a trial by jury and the right to introduce additional evidence, no good purpose could be served by using hours to select a jury and conduct a trial if the judge were correctly of the opinion that the plaintiff could not by the presentation of additional evidence present a jury question. So — the result here must turn upon the decision of the Judge that the pleadings and stipulated facts were such that no evidence could be introduced by the plaintiff that would require a jury determination. In effect, we must determine whether the pleadings and stipulations considered in the light most favorable to the plaintiff would withstand a motion for nonsuit.

We grant that there are allegations upon which a *jury* should be allowed to determine the defendant's plea of contributory negligence in the use by the plaintiff of a smaller pipeline under its building to convey the water contents of the larger one, and also the claim by the defendant that the plaintiff assumed the risk of damage to its property by so doing. We must recall, however, that the Court was without knowledge of the evidence the plaintiff could offer to repel these claims. We cannot deny it the opportunity to do so, and it must be remembered that upon these contentions the burden would be on the defendant — not the plaintiff.

And now, turning to the plaintiff's position, construed most favorably to it, the plaintiff alleges that by the City's action in removing a 36-inch pipe or culvert, which was guarded by the use of covers, grilles, and other protective devices, and replacing it with a larger one, without grilles or other devices to prevent tires and other large debris from entering it, it created a condition that would flood plaintiff's property when they could not be accommodated by plaintiff's smaller culverts. In blocking the plaintiff's culverts they would naturally cause water to pond and flood plaintiff's property, which plaintiff alleged resulted in $75,000 damage.

Here, we think the following excerpt from *Hotels, Inc. v. Raleigh*, 268 N.C. 535, 151 S.E. 2d 35, is applicable:

> "In *Johnson v. City of Winston-Salem*, 239 N.C. 697, at p. 707, 81 S.E. 2d 153, which is cited by the Present Chief Justice Parker, in *Hormel & Company v. Winston-Salem*, 263 N.C. 666, at p. 675, 140 S.E. 2d 362, it is said: 'The general rule is that a municipality becomes responsible for maintenance, and liable for injuries resulting from a want of due care in respect to upkeep, of drains and culverts constructed by third persons when, and only when, they are adopted as a part of its drainage system, or the municipality assumes control and management thereof.' That this is the generally accepted rule is shown by the

following excerpt: 'The rule as to municipal liability for defects and obstructions in sewers and drains * * * remains the same whether a natural watercourse is adopted for drainage purposes or an artificial channel is built; and, where a municipality has assumed jurisdiction over a stream flowing into the city, it may become liable for injury caused by its negligence in the control of the water. Where a city adopts a natural watercourse for sewerage or drainage purposes, it has the duty to keep it in proper condition and free from obstructions, and it is liable for damage resulting from neglect therein.' 63 C.J.S. 262."

The City claims that the old 36-inch culvert had been installed by others when the area was annexed by it in 1919, that thereafter it maintained it and that in 1960 it replaced it with a 42-inch concrete culvert. To maintain the existing culvert for forty years and then to revise and enlarge the method of controlling the drainage, even from a natural watercourse, would be to assume its control and management and require it to use reasonable diligence to keep the drain in good repair and condition and render it liable to one damaged by its negligence in this respect. 38 Am. Jur., Municipal Corporations, § 637.

"If sewers, drains, or culverts constructed by third persons, are in some legal manner adopted by the municipality as a part of its sewage or drainage system, *or the municipality assumed control and management* thereof, the municipality becomes liable for injuries resulting therefrom, since in such cases it is immaterial by whom the sewer, drain, or culvert was constructed." McQuillin, Municipal Corporations, 3rd Ed. Rev., Vol. 18, § 53.118.

While most of the cases deal with alleged damage to owners above the point of obstruction, it was held in *Sherrill v. Highway Commission*, 264 N.C. 643, 142 S.E. 2d 653, that a governmental unit is liable also to a lower riparian owner. Whether the plaintiff can substantiate its allegations remains to be seen, but it is entitled to the opportunity to do so. As said by Stacy, C.J. in *Abernethy v. Burns*, 206 N.C. 370, 173 S.E. 899: "He may not get to first base, but he is entitled to come to the bat."

Reversed.