ASHEVILLE SPORTS PROPERTIES, LLC, and ASHEVILLE SPORTS, INC., ALSO D/B/A SKI COUNTRY SPORTS, PLAINTIFFS v. THE CITY OF ASHEVILLE, DEFENDANT

No. COA08-1085

(Filed 1 September 2009)

**1. Appeal and Error— appealability—improper materials— summary judgment motion**

The Court of Appeals disregarded those materials cited by plaintiffs in a negligence case (such as unverified pleadings and unsupported factual allegations) that may not properly be considered on a motion for summary judgment.

**2. Cities and Towns— municipal liability for waterway maintenance—storm water drainage pipes—no duty to exercise reasonable care to inspect, maintain, and repair**

The trial court did not err in a negligence case by granting the City's motion for summary judgment in an action seeking damages for two sinkholes that developed on plaintiffs' property as a result of the failure of storm water drainage pipes running under plaintiffs' parking lot. Although plaintiffs contend the City had an affirmative duty to exercise reasonable care to inspect, maintain, and repair the storm drain pipes buried under plaintiffs' property, plaintiffs admitted in their brief that no stormwater structures owned by the City were located on plaintiffs' property or on immediately adjoining properties, and it was undisputed that the pipes under plaintiffs' property were put in place by a previous owner of the property and were owned solely by plaintiffs.

ASHEVILLE SPORTS PROPERTIES, LLC v. CITY OF ASHEVILLE

[199 N.C. App. 341 (2009)]

**3. Utilities— collection of public utility fee—no duty to maintain privately owned pipes**

Plaintiffs in a negligence case have not shown that the City's duty to maintain its own pipes by virtue of a public utility fee should create a duty to maintain plaintiffs' privately owned pipes, nor have plaintiffs cited any authority suggesting that the City's collection of storm water utility fees gave rise to an affirmative duty to inspect, maintain, and repair a privately owned drainage pipe on private property.

**4. Negligence— causation—directing unreasonable amount of storm water runoff into pipes**

Although plaintiffs alternatively contend in a negligence case that the City's liability for plaintiffs' property damage arises from a duty to refrain from directing an unreasonable amount of storm water runoff into pipes that eventually flow into plaintiffs' pipes, there was insufficient evidence of causation to support this theory.

**5. Appeal and Error— preservation of issues—failure to argue**

Although plaintiffs contend they are entitled to equitable relief even if they failed to prove the elements of negligence, plaintiffs only brought a claim for negligence against the City and asserted no claim based on any equitable principle. The Court of Appeals declined to adopt a new rule imposing a duty on the City to exercise reasonable care.

Appeal by plaintiffs from order entered 30 June 2008 by Judge Ronald K. Payne in Buncombe County Superior Court. Heard in the Court of Appeals 12 February 2009.

*Roberts & Stevens, P.A., by Mark C. Kurdys and Ann-Patton Nelson Hornthal, for plaintiffs-appellants.*

*Barbour Law Firm, PLLC, by Frederick S. Barbour; and Assistant City Attorney Martha Walker-McGlohon, for defendant-appellee.*

GEER, Judge.

Plaintiffs Asheville Sports Properties, LLC ("ASP") and Asheville Sports, Inc. ("Asheville Sports") appeal the trial court's grant of summary judgment to defendant, the City of Asheville. Two sinkholes developed on plaintiffs' property as a result of the failure of storm

water drainage pipes running under plaintiffs' parking lot. Plaintiffs first contend that the City should be liable for the damage because it failed to maintain and repair the pipes. Plaintiffs have, however, failed to establish that the City had a duty to do so with respect to these privately installed and owned storm water drainage pipes. Although plaintiffs alternatively argue that the City should be held liable for having directed an unreasonable volume of water through the private pipes, plaintiffs have failed to present any evidence as to causation with respect to that theory. Because we also find plaintiffs' remaining arguments unpersuasive, we hold that the trial court properly granted summary judgment to the City, and we affirm.

## Facts

ASP owns the real property and building located at 1000 Merrimon Avenue in Asheville, North Carolina. ASP leases a portion of the building to Asheville Sports for the operation of Ski Country Sports, a business that sells specialty outdoor equipment and apparel. A storm water drainage system consisting of a series of corrugated metal pipes, each 54 inches in diameter, is buried under the parking lot of the property. The pipes were installed in approximately 1978 by one of the property's previous owners. At the boundaries of the property, the pipes are connected to other storm water drainage pipes that run along Merrimon Avenue, Osborne Road, Lakeshore Drive, Beaverdam Road, and the surrounding areas in Asheville.

On 30 May 2006, a large sinkhole, caused by the collapse of a portion of the pipes underneath plaintiffs' property, formed on the parking lot of the property. When the City refused to repair the damage, plaintiffs paid $94,000.00 to replace 30 or 40 feet of the pipes and to repair the parking lot. On 27 July 2007, another sinkhole formed on the property when a portion of the pipes further downstream failed. After the City again refused to perform the repairs, plaintiffs paid roughly $124,000.00 to have the pipes and property repaired.

On 22 August 2007, plaintiffs filed a verified complaint against the City, asserting three causes of action: (1) negligence, (2) nuisance, and (3) inverse condemnation. Plaintiffs requested a temporary restraining order, a preliminary injunction, and monetary damages. On 12 September 2007, the trial court denied plaintiffs' motion for a temporary restraining order and preliminary injunction. On 20 November 2007, plaintiffs filed an unverified amended complaint in which they withdrew their claims for nuisance and inverse condemnation, leaving only their negligence claim remaining.

On 22 April 2008, the City moved for summary judgment, and on 12 June 2008, plaintiffs filed a cross-motion for partial summary judgment. On 30 June 2008, the trial court entered an order denying plaintiffs' motion for partial summary judgment and granting the City's motion for summary judgment, finding that "there is no genuine issue of material fact and Defendant City is entitled to judgment in its favor as a matter of law." Plaintiffs timely appealed to this Court.

## Discussion

This Court reviews the trial court's grant of summary judgment de novo. *Howerton v. Arai Helmet, Ltd.*, 358 N.C. 440, 470, 597 S.E.2d 674, 693 (2004). Summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C.R. Civ. P. 56(c).

[1] We first make some observations regarding the evidentiary support cited by plaintiffs in their main brief and reply brief. As the Supreme Court explained in *Kidd v. Early*, 289 N.C. 343, 370, 222 S.E.2d 392, 410 (1976), "[t]he purpose of Rule 56 is to prevent unnecessary trials when there are no genuine issues of fact and to identify and separate such issues if they are present." Therefore, Rule 56 "requires the party opposing a motion for summary judgment—notwithstanding a general denial in his pleadings—to show that he has, or will have, evidence sufficient to raise an issue of fact." *Id.* Thus, "the opposing party may not rest on the mere allegations or denials of his pleading." *Gillis v. Whitley's Discount Auto Sales, Inc.*, 70 N.C. App. 270, 274, 319 S.E.2d 661, 664 (1984). Rather, "the opposing party must set forth specific facts showing that there is a genuine issue for trial, either by affidavits or as otherwise provided in G.S. § 1A-1, Rule 56. . . ." *Id.*

On many key points in plaintiffs' briefs, instead of citing to evidence, they rely exclusively on citations to their unverified amended complaint. "[T]he trial court may not consider an unverified pleading when ruling on a motion for summary judgment." *Allen R. Tew, P.A. v. Brown*, 135 N.C. App. 763, 767, 522 S.E.2d 127, 130 (1999), *disc. review improvidently allowed*, 352 N.C. 145, 531 S.E.2d 213 (2000). *See also Hill v. Hill*, 11 N.C. App. 1, 10, 180 S.E.2d 424, 430 ("An unverified complaint is not an affidavit or other evidence."), *cert. denied*, 279 N.C. 348, 182 S.E.2d 580 (1971).

We acknowledge that some, but not all, of the amended complaint paragraphs cited in the briefs are repeated in the original verified complaint. "A verified complaint may be treated as an affidavit if it (1) is made on personal knowledge, (2) sets forth such facts as would be admissible in evidence, and (3) shows affirmatively that the affiant is competent to testify to the matters stated therein." *Page v. Sloan*, 281 N.C. 697, 705, 190 S.E.2d 189, 194 (1972). Plaintiffs' initial complaint was verified by Craig W. Friedrich, who was identified in the verification as the manager of ASP.

With respect to the allegations relied upon by plaintiffs, the verified complaint does not demonstrate that Mr. Friedrich had personal knowledge of the facts contained in those allegations or that he is competent to testify to those facts. Indeed, some of the paragraphs are asserted "upon information and belief." Our appellate courts have, however, "repeatedly held that statements made 'upon information and belief'—or comparable language—'do not comply with the "personal knowledge" requirement . . . .' " *Currituck Assocs.- Residential P'ship v. Hollowell*, 170 N.C. App. 399, 404, 612 S.E.2d 386, 389 (quoting *Hylton v. Koontz*, 138 N.C. App. 629, 634, 532 S.E.2d 252, 256 (2000), *disc. review denied*, 353 N.C. 373, 546 S.E.2d 603 (2001)).

Plaintiffs have also cited to their own response to a request for production of documents. As that response is unsworn, it does not fall within the scope of materials permitted to be considered under Rule 56. *See Dixon v. Hill*, 174 N.C. App. 252, 262, 620 S.E.2d 715, 721 (2005) (holding defendant's denials in unverified response to plaintiffs' request for admissions could not be considered in summary judgment), *disc. review denied*, 360 N.C. 289, 627 S.E.2d 619, *cert. denied*, 548 U.S. 906, 165 L. Ed. 2d 954, 126 S. Ct. 2972 (2006).

Finally, plaintiffs have, in other instances, simply made factual assertions with no citations to the record at all. Those assertions in an appellate brief, without evidentiary support, cannot support a reversal of summary judgment. *See Morrison-Tiffin v. Hampton*, 117 N.C. App. 494, 505, 451 S.E.2d 650, 658 ("An adequately supported motion for summary judgment by the defendant triggers the plaintiff's responsibility to produce facts, as distinguished from allegations, sufficient to show that he will be able to prove his claim at trial. In the present case, plaintiffs rely on mere conjecture and have shown no facts sufficient to support their allegations of a common agreement and objective. Accordingly, the trial court properly entered summary

judgment for defendants." (internal citation omitted)), *appeal dismissed and disc. review denied*, 339 N.C. 739, 454 S.E.2d 654 (1995).

In reviewing the trial court's summary judgment order in this case, we have disregarded those materials cited by plaintiffs that may not properly be considered in connection with a motion for summary judgment. We now address each of plaintiffs' contentions regarding the merits of their claims.

I

**[2]** Plaintiffs first argue that the trial court erred in granting the City's motion for summary judgment because the City "had an affirmative duty to exercise reasonable care to inspect, maintain, and repair the storm drain pipes buried under plaintiff's [sic] property. . . ." Plaintiffs contend that, even though the pipes were constructed by private parties and are located on their private property, the City adopted the pipes by using them "as integral components of [its] municipal storm water runoff control and drainage system," and the City is, therefore, responsible for their upkeep.

In *Johnson v. City of Winston-Salem*, 239 N.C. 697, 707, 81 S.E.2d 153, 160 (1954), our Supreme Court held that

> a municipality becomes responsible for maintenance, and liable for injuries resulting from a want of due care in respect to upkeep, of drains and culverts constructed by third persons when, and only when, they are adopted as a part of its drainage system, or the municipality assumes control and management thereof.

The Court explained that "there is no municipal responsibility for maintenance and upkeep of drains and culverts constructed by third persons for their own convenience and the better enjoyment of their property unless such facilities be accepted or controlled in some legal manner by the municipality." *Id.*

In *Johnson*, 293 N.C. at 699, 81 S.E.2d at 154, the prior owner of the defendant's property extended a storm drain across the property. He then filled in the ditch through which the water had previously flowed and developed the property for residential purposes. *Id.* After the defendant bought the property, a manhole just below the plaintiffs' property became stopped up, during a heavy rainstorm, by a large piece of terra cotta pipe that had washed down from the defendant's property, causing the manhole to overflow and flood the plaintiffs' basement. *Id.* at 702, 81 S.E.2d at 157. The plaintiffs brought suit

against both the defendant and the City, contending the City had wrongfully diverted surface waters into the drain and that both the defendant and the City failed to exercise proper care in keeping the drain in good repair. *Id.* at 703, 81 S.E.2d at 157.

On appeal, the defendant argued that he had no legal duty to maintain the drain on his property, contending that "although this underground drain originally may have been a private drainage project, it had lost its identity as such and had been taken over or appropriated as a part of the city street and park drainage system, and while the burden of maintenance and upkeep may have rested originally upon the property owners along the drain, this burden had passed to the City by operation of law as incident to its use and control of the pipe line." *Id.* at 706, 81 S.E.2d at 160. The Court rejected that argument, noting that "[t]he record discloses no evidence tending to show dedication or legal acceptance by the City of the drain as a part of its drainage system, nor control over it by the City as such, within the purview of the controlling principles of law." *Id.* at 708, 81 S.E.2d at 161.

Since the Supreme Court's explanation of the general rule in *Johnson*, our appellate courts have had several occasions to further define the scope of municipal liability for waterway maintenance. In *Geo. A. Hormel & Co. v. City of Winston-Salem*, 263 N.C. 666, 668, 140 S.E.2d 362, 363 (1965), the plaintiff's building was flooded when the pipes under the property on which the building was located collapsed. The plaintiff sought to hold the City liable for the damage. The Supreme Court held:

> Plaintiff cannot invoke the application of the general rule that a municipality is liable for damages caused by its negligence in the maintenance and repair of its sewers and drains constructed by it, which is the cause of action it has alleged in its complaint, for the simple reason that all its proof is that the drainage pipes which collapsed causing its damage were not only constructed and installed by an individual, Liberty Storage Company, on its own property, but were actually under the control of Liberty Storage Company.

*Id.* at 674, 140 S.E.2d at 367 (internal citations omitted).

The Court explained that:

Further, plaintiff cannot invoke the application of the general rule that municipal adoption and control of drainage culverts or pipes

complained of, constructed or owned by an individual, is sufficient to render the municipality liable for defects or obstructions therein, for the reason that it has neither allegation nor proof to call this rule of law into play. The mere fact, as shown by plaintiff's evidence, that defendant in the Levy building bolted the manhole down of Liberty Storage Company's private drainage line and sealed the holes therein, and that defendant regularly sent an employee through the private drainage system of Liberty Storage Company to see that it was open and waters could leave its streets did not constitute municipal adoption and control of Liberty Storage Company's private drainage system on its premises.

*Id.*, 140 S.E.2d at 367-68 (internal citations omitted). The Court cited in support *City of Irvine v. Smith*, 304 Ky. 868, 202 S.W.2d 733 (1947), in which the Kentucky Court of Appeals "held that where sewers constructed by the city were placed to catch surface water as it drained naturally, the fact that such culverts and sewers crossing streets were connected with private sewers did not constitute a dedication of private sewers to public use." *Hormel*, 263 N.C. at 674, 140 S.E.2d at 368. The Court, therefore, affirmed the grant of nonsuit. *Id.* at 677, 140 S.E.2d at 370.

In *Mitchell v. City of High Point*, 31 N.C. App. 71, 71-72, 228 S.E.2d 634, 634-35 (1976), the plaintiffs alleged the City was liable for the damage sustained when the plaintiffs' land was flooded during a rainstorm because the City had failed to adequately maintain its drainage system. The Court held that the City's control and maintenance of two culverts upstream from the plaintiffs' property did not mean that the City had adopted the entire stream. *Id.* at 75, 228 S.E.2d at 637. The Court explained:

Except for those portions of the stream bed in the defendant's street right-of-way the plaintiffs have failed to show that the defendant exercised legal control and management of the stream bed or adopted it in any manner. That being so, the court erred in charging the jury that the defendant "adopted" the stream bed.

*Id.*, 228 S.E.2d at 636-37. This Court, therefore, held that the City owed no duty to the plaintiffs and could not be held liable. *Id.*, 228 S.E.2d at 637.

We believe this case is similar to *Mitchell* and *Hormel* and, consequently, requires the same result reached in those cases. Plaintiffs

admit in their brief that "no stormwater structures owned by the City of Asheville are located on Plaintiffs' property or on immediately adjoining properties . . . ." It is undisputed that the pipes under plaintiffs' property were put in place by a previous owner of the property and were owned solely by plaintiffs.

On the issue of maintenance and repair, the City submitted the affidavit of Nick Harvey, an analyst in the City's Transportation and Engineering Department, in which he explained that "[t]he City does not own or maintain the stormwater drain structures located on private property, with the exception of those structures that the City has accepted by deed or dedication and adoption." Mark Combs, the City's Director of Public Works, stated in his affidavit that "[t]he City has not at any time accepted the subject pipe by dedication." Finally, Charlotte Hutchinson, a City research analyst, confirmed in her affidavit that "the city has never accepted dedication of an easement across the subject property."

Moreover, in 1992, the City adopted Resolution 92-20, which states: "All existing storm drainage systems or portions thereof, including but not limited to pipes and pipe culverts, reinforced concrete culverts, catch basins, drop inlets, junction boxes, ditches and natural drainageways, located on private property shall be maintained by the property owner or his agent." Similarly, Subsection (j)(1) of Section 7-12-6 of the City's Unified Development Ordinance states that "[t]he City shall be responsible only for the portions of the drainage system which are in city maintained street rights of way and permanent storm drainage easements conveyed to and accepted by the city."

In response to this evidence, plaintiffs presented no evidence that the City has ever taken any action with respect to plaintiffs' pipes. The record contains no evidence that the City expressly adopted the pipes as part of its storm water management system; there is no evidence that the City ever assumed control or management of the pipes; and there is no evidence that the City engaged in any maintenance, repair, or even inspection or monitoring of the pipes. Plaintiffs rely solely upon a map showing that their pipes connect with other drainage pipes that connect with the City's storm water management facilities. Under *Johnson, Hormel,* and *Mitchell,* that evidence is not sufficient.

Plaintiffs cite four cases in which our appellate courts held that a city was liable for the failure of a private drainage system because the city had adopted that system. *See Dize Awning & Tent Co. v. City*

*of Winston-Salem*, 271 N.C. 715, 157 S.E.2d 577 (1967); *Milner Hotels, Inc. v. City of Raleigh*, 268 N.C. 535, 151 S.E.2d 35 (1966), *modified on reh'g*, 271 N.C. 224, 155 S.E.2d 543 (1967); *Howell v. City of Lumberton*, 144 N.C. App. 695, 548 S.E.2d 835 (2001); and *Hooper v. City of Wilmington*, 42 N.C. App. 548, 257 S.E.2d 142, *disc. review denied*, 298 N.C. 568, 261 S.E.2d 122 (1979). The evidence in each of these cases is distinguishable from that presented in this case. In all of the cases cited by plaintiffs, the municipalities took some affirmative action to signal they had adopted the system in some legal manner.

Plaintiffs rely heavily on this Court's decision in *Hooper*, 42 N.C. App. at 552-53, 257 S.E.2d at 145. In that case, the plaintiffs argued, like plaintiffs here, that the drainage ditch on their property was part of the City's drainage system, and the City was, therefore, liable for diverting more water than natural into the ditch because it caused erosion on the plaintiffs' land. *Id.* at 549, 257 S.E.2d at 143. The plaintiffs presented evidence that the City "controlled all drains and culverts above and below the plaintiffs' property in that drainage basin." *Id.* at 552-53, 257 S.E.2d at 143. The water flowing into the ditch came from and continued on through a system of City-maintained ditches throughout the drainage basin. No other city used the ditch, and the City had regularly repaired and maintained the ditch above and below the plaintiffs' property. *Id.*

Following a bench trial at which the plaintiffs prevailed, the City argued to this Court that there had been no evidence of dedication of the ditch to the City and that the mere fact that the City adopted and controlled the ditch where it intersected with City streets was not sufficient. *Id.* at 552, 257 S.E.2d at 144. This Court concluded, however, that "there [was] considerably more evidence of control over the entire stream than was present in *Mitchell.*" *Id.*, 257 S.E.2d at 145. The Court reasoned that "[t]he city controlled all drains and culverts above and below the plaintiffs' property in that drainage basin." *Id.* at 552-53, 257 S.E.2d at 145. Additionally, "[o]ther city owned ditches drained into the [ditch] above plaintiff's property." *Id.* at 553, 257 S.E.2d at 145. There was also testimony by a City official that the City "used" the ditch and that "city work crews had regularly snagged and worked the [ditch] above and below plaintiffs' property." *Id.* The Court held: "After a careful review of the record and plaintiffs' exhibits, we hold that there is ample evidence to support the findings of the trial court that the city had adopted, managed and controlled the entire [ditch]." *Id.*

In this case, there are no similar admissions by the City. In addition, plaintiffs acknowledge that their pipes are not immediately connected with City pipes, but rather are connected to other private property. The only evidence plaintiffs rely upon is the map of the drainage system showing that, at some point, the water in their pipes runs through other pipes owned by the City. This map cannot create an issue of fact as to whether the City adopted plaintiffs' storm drain, especially in light of the evidence that the City owns and maintains only a small percentage of the storm drains in Asheville. In his affidavit, Mark Combs states that "City of Asheville records indicate there are approximately 219 miles of mapped stormwater pipe located within the corporate limits of the City of Asheville. Of this 219 miles, approximately 47 miles, or 22%, are owned by the City of Asheville. Approximately 27 miles, or 12%, are owned by the North Carolina Department of Transportation. Approximately 145 miles, or 66%, are owned by private parties." In the drainage area of approximately 210 acres, "the City owns or has right-of-way for approximately 34 acres or 16 percent of the total acreage."

Additionally, there is no evidence of any maintenance or control immediately along the drainage line, including where plaintiffs' pipes are located. Combs explains in his affidavit that "[t]he City of Asheville maintains the stormwater pipe it owns. The City does not maintain stormwater pipe owned by the North Carolina Department of Transportation or private parties." Combs also states that "[t]he subject pipe is not maintained, and has never been maintained, by the City of Asheville" and that "[t]he subject pipe is not located within any right-of-way of the City of Asheville." Plaintiffs have presented no contrary evidence.

In short, in contrast to *Hooper*, there is no evidence that the City admitted using plaintiffs' storm drains, that the City controls any pipes or drains immediately above or below plaintiffs' property, or that the City has performed any repair or other work on the pipes that ultimately connect with plaintiffs' pipes. Indeed, the undisputed evidence was that the City owned and maintained only a relatively small percentage of the storm drains and pipes within the City. Accordingly, *Hooper* does not warrant overturning the summary judgment order.

Plaintiffs also refer this Court to *Milner Hotels*, 268 N.C. at 535, 151 S.E.2d at 36, in which the City used a stream flowing through the plaintiff's property to drain storm runoff by connecting the City's gutters and street drains with the stream. The City performed periodic maintenance on a culvert to clear debris after rainstorms, but

only after the waters subsided. *Id.* After a particularly heavy rainstorm, water backed up and flooded the plaintiff's property. *Id.* at 536, 151 S.E.2d at 36.

The plaintiff sued the City, which contended that it had no duty to the plaintiff. *Id.* The Court disagreed, holding that because the City had repaired and maintained the culvert at other times, it had assumed control and management of the system and could be held liable. *Id.* at 537, 151 S.E.2d at 37-38. In this case, however, plaintiffs have presented no evidence that the City maintained plaintiffs' pipes at any time.

In *Dize Awning*, 271 N.C. at 717, 157 S.E.2d at 578, the plaintiff sued the City when its property was flooded after a heavy rainstorm. Previously, there had been drainage pipes and culverts underneath the property with covers or grills on them to prevent debris from entering the system and blocking the pipes. *Id.* at 716-17, 157 S.E.2d at 577. They had been installed by someone else, but later were maintained by the City. *Id.* The City removed an old culvert and replaced it with a new one, but failed to install a grill or other protective covering across the opening. *Id.* at 717, 157 S.E.2d at 578. When it rained, large debris flowed through the pipe and blocked the opening, causing the rainwater to back up and overflow onto the plaintiff's property. *Id.*

The Court held that the City could be held liable, explaining:

> To maintain the existing culvert for forty years and then to revise and enlarge the method of controlling the drainage, even from a natural watercourse, would be to assume its control and management and require [the City] to use reasonable diligence to keep the drain in good repair and condition and render it liable to one damaged by its negligence in this respect.

*Id.* at 721, 157 S.E.2d at 581. Once the City assumed control of the culvert by removing the old culvert and replacing it with a new one, it was responsible for its upkeep. By contrast, here, there is no evidence that the City took any affirmative steps to take responsibility for the pipes' upkeep on plaintiffs' property.

Finally, plaintiffs rely on *Howell*, 144 N.C. App. at 703, 548 S.E.2d at 840, in which the City was held liable for sinkholes caused by the City's maintenance of the pipe underneath the plaintiff's property. That case is readily distinguishable from the facts at hand because, in

*Howell,* the City actually owned the pipe and the easement on which the pipe was located. *Id.* at 697, 548 S.E.2d at 837.

In sum, in all of the cases cited by plaintiffs, the city took affirmative acts to control or assume management of the pipe at issue. Plaintiffs have pointed to no evidence of any such affirmative acts taken by the City in this case. Accordingly, we hold that *Johnson, Hormel,* and *Mitchell* control, and plaintiffs have failed to show that the City undertook a duty to maintain plaintiffs' pipes.

II

[3] Plaintiffs next contend that the City's duty to maintain their pipes arises from the City's collection of storm water utility fees from plaintiffs and other private property owners. We note that plaintiffs did not include this argument in their main brief, but instead asserted it for the first time on appeal in their reply brief. Because, however, the City anticipated this argument in its appellee's brief, we address the argument on the merits.

The City collects a storm water utility fee that it uses to improve, repair, and maintain those portions of the storm water drainage system that are owned by the City. This fee is specifically authorized by the General Assembly. *See* N.C. Gen. Stat. § 160A-314(a) (2007) ("A city may establish and revise from time to time schedules of rents, rates, fees, charges, and penalties for the use of or the services furnished by any public enterprise."); N.C. Gen. Stat. § 160A-311(10) (2007) (providing that the term "public enterprise" includes "[s]tormwater management programs designed to protect water quality by controlling the level of pollutants in, and the quantity and flow of, stormwater and structural and natural stormwater and drainage systems of all types").

The City can only charge those fees necessary to provide "a structural and natural stormwater and drainage system to the City's citizens as contemplated by the General Assembly." *Smith Chapel Baptist Church v. City of Durham,* 350 N.C. 805, 815, 517 S.E.2d 874, 881 (1999) (holding City of Durham's storm water utility fee scheme invalid because City used fees for more than maintenance of storm water drainage system and charged fees "far exceed[ing] the cost of providing a structural and natural stormwater and drainage system").

Plaintiffs stress that they are not seeking "to invalidate the City of Asheville's storm water utility nor to recover the storm water utility

fees they have paid," as the plaintiffs in *Smith Chapel* were. Rather, in their reply brief, plaintiffs clarify:

> Plaintiffs seek to recover damages resulting from the failure of the City to provide to the Plaintiffs the service for which the City has collected such fees. Having collected such fees from the Plaintiffs, the City is obligated, certainly since 2006, to provide storm drainage management and maintenance, including periodic inspections and necessary repairs, to the Plaintiffs. Hand-in-hand with the duty to provide service is the legal duty to provide such services in a reasonable manner, and those cases cited by both Appellants and Appellee in their primary briefs establish the viability of an action to recover damages incurred by a property owner as the result of a municipality's breach of the duty to provide such services in a reasonable, non-negligent manner.

(Emphasis omitted.) In other words, plaintiffs are contending that the City owes them a duty to inspect, repair, and maintain their pipes because the City has a duty to inspect, repair, and maintain public storm water drainage pipes by virtue of charging a utility fee for the service.

Plaintiffs have not, however, shown that the storm water utility fee was established to maintain privately owned pipes that connect to the City's pipes, as well as the City's storm water drainage system. Nor, in light of the City's Resolution 92-20 and its Unified Development Ordinance, can we make that assumption. Therefore, plaintiffs have not shown that the City's duty to maintain its own pipes by virtue of the public utility fee should extend to create a duty to maintain plaintiffs' privately owned pipes. We further note that plaintiffs have cited no authority suggesting that the City's collection of storm water utility fees gives rise to an affirmative duty to inspect, maintain, and repair a privately owned drainage pipe on private property. We decline to reach such a holding here given the record before us.

III

[4] Plaintiffs alternatively contend that the City's liability for plaintiffs' property damage arises from a duty to refrain from directing an unreasonable amount of storm water runoff into pipes that eventually flow into plaintiffs' pipes. Our courts have, in certain circumstances, recognized such a municipal duty.

In *Eller v. City of Greensboro*, 190 N.C. 715, 720, 130 S.E. 851, 853 (1925), our Supreme Court held that a municipality could be held "liable for negligence in not exercising skill and caution in the construction of its artificial drains and watercourses." The Court explained that "[i]f [the city's drains and watercourses] are so constructed as to collect and concentrate surface water that such an unnatural flow in manner, volume and mass is turned and diverted onto the lower lot, so as to cause substantial injury, the city is liable." *Id.* See also *Yowmans v. City of Hendersonville*, 175 N.C. 575, 578, 96 S.E. 45, 47 (1918) (holding that municipalities "are not allowed, from this or other cause, to concentrate and gather such waters into artificial drains and throw them on the lands of an individual owner in such manner and volume as to cause substantial injury to the same and without making adequate provision for its proper outflow, unless compensation is made, and for breach of duty in this respect an action will lie").

Even though such a duty exists, a plaintiff must still prove all of the other elements of negligence. In *Hooper*, 42 N.C. App. at 553, 257 S.E.2d at 145, in addition to holding that the City adopted the ditch located on the plaintiffs' property, the Court also held that the City "had a duty to use due care in controlling the water" diverted into the ditch. The Court explained that "[a]ssuming that a municipality has adopted an open drainage ditch as part of its drainage system '*it may become liable for injury caused by its negligence* in the control of the water.' " *Id.* (emphasis added) (quoting *Milner*, 268 N.C. at 536, 151 S.E.2d at 37). Because the plaintiffs in *Hooper* presented evidence that the plaintiffs' land had been eroded due to the increased water flow into the ditch resulting from the City's too small culvert, the Court held that "[t]he plaintiffs presented sufficient evidence to support the court's findings that the City's negligence had proximately caused the erosion damage to plaintiffs' property." *Id.* at 554, 257 S.E.2d at 146.

In *Johnson*, 239 N.C. at 707, 81 S.E.2d at 160, on the other hand, the Court held that the plaintiffs had failed to present sufficient evidence of causation. The defendant property owner argued that the City was at fault for the flooding of the plaintiffs' property, contending that the City had made extensive. street improvements that materially increased the flow of street surface waters and diverted these waters into the storm drain. The Court rejected this argument, explaining:

There is no evidence that the City augmented the flow of water to the point of overloading the drain or causing an overflow, and the plaintiffs' claim here asserted is not, on this record, traceable to any such causal origin. Therefore the appeal as presented does not bring into focus the rules of law applicable where there is an acceleration or increase in the volume of surface waters in or through a drain incident to the improvement of lands. Accordingly, we deem it unnecessary to discuss the refinements of these rules of law.

*Id.*, 81 S.E.2d at 160-61.

Similarly, here, plaintiffs state in their brief that "drains, culverts and ditches on City-owned streets and rights-of-way have been intentionally connected to the drain pipes buried under neighboring properties below and above the Plaintiffs' property and running in a continuous fashion, thus diverting runoff from City streets into those pipes." They further argue in their brief that "[b]y design, the pavement, curbs, gutters and other stormwater control structures on property where the City is the owner of record (primarily city streets and sidewalks) drastically alter the natural runoff of rainwater falling and/or flowing onto the surface of all property within the Catchment Area." According to plaintiffs' brief, "[t]his drastic alteration in the natural runoff has the effect of concentrating and increasing the volume and flow of storm water accumulating in the City's streets and thereafter artificially-diverting [sic] that runoff into surface ditches, culverts and pipes buried under private property, in particular the pipes located under Plaintiffs' property. As a result, an unreasonable amount of storm runoff flows through the pipes buried deep beneath Plaintiffs' property."

Plaintiffs, however, include no citations to any evidence to support these assertions. They similarly omit any citations to the record to support their factual assertion that

[t]he City has placed an unreasonable burden on [plaintiffs'] structures by artificially diverting the stormwater that falls and flows from other properties onto City-owned and controlled impervious surfaces, directing and concentrating the volume and flow of that stormwater with pavement, curbs, gutters, ditches, catch basins and other structures and then discharging the artificially-increased volume and flow into the stormwater structures under Plaintiffs' property.

We cannot assume that there has been a drastic alteration to the natural runoff of rainwater without supporting testimony or documentary evidence in the record. We also cannot assume without evidence that, because of the City's actions, an unreasonable amount of storm water runoff flows through plaintiffs' pipes. Nor can we assume, without evidence, that the City has artificially diverted and increased the water and placed an unreasonable burden on plaintiffs' storm water pipes. *Compare Hooper*, 42 N.C. App. at 551, 257 S.E.2d at 144 (holding City liable where expert testified natural drainage path had been altered and flow of water increased as result of City's actions), *with Mitchell*, 31 N.C. App. at 74, 228 S.E.2d at 636 (rejecting plaintiff's argument that City could be held liable for diverting unreasonable amounts of water into plaintiff's waterway because "[t]here [was] no evidence that the City augmented the flow of water to the point of overloading the stream or causing an overflow").

The only evidence relating to causation is the testimony of Craig Friedrich, the owner of ASP, who, when asked to identify the cause of the sinkhole, stated, "The rainfall I imagine is what caused it." Mr. Friedrich then stated that he thought "the pipe collapsed because of, I guess, just wear, age or deterioration." His testimony does not support plaintiffs' claim that the sinkhole was caused by the City's redirecting an unreasonable amount of water through plaintiffs' storm water pipes. Because there is insufficient evidence of causation, this theory does not provide a basis for overturning the trial court's summary judgment order.

IV

[5] Finally, plaintiffs argue that even if they failed to prove the elements of negligence, they are entitled to equitable relief. According to plaintiffs, "based on equitable principles, the City should not be allowed to pump as much water as it wants through the pipes under Plaintiffs' property." Plaintiffs contend that it could not have been anticipated when their pipes were installed that "those pipes would be responsible for the flow of the City's water and an integral part of the City's drainage system." Once they were installed, plaintiffs argue, they had no way to block the City's water or make sure the pipes could handle that water.

Plaintiffs, however, only brought a claim for negligence against the City. The Amended Complaint asserts no claim based on any equitable principle. Plaintiffs even withdrew their request for injunctive relief. Since a claim for equitable relief was not before the trial court,

plaintiffs cannot argue that the trial court erred, in light of such a claim, in granting summary judgment.

Moreover, plaintiffs cite only a single case in support of their "equitable principles" theory: *Marriott Fin. Servs., Inc. v. Capitol Funds, Inc.*, 288 N.C. 122, 217 S.E.2d 551 (1975). Plaintiffs quote its holding that "[i]t is a well-recognized principle that equity will grant relief from the consequences of mistake, 'some unintentional omission, or error, arising from ignorance, surprise, imposition or misplaced confidence.' " *Id.* at 135, 217 S.E.2d at 560 (quoting 27 Am. Jur. 2d *Equity* § 28). *Marriott Financial Services*, however, addressed whether the remedy of rescission was available as to a contract allegedly entered into based on a mutual mistake of fact. *Id.* at 137, 217 S.E.2d at 561. We fail to see what relevance *Marriott Financial Services* has to the facts of this case. We, therefore, overrule this assignment of error.

Plaintiffs also urge this Court to adopt a new rule imposing a duty on the City to exercise reasonable care "because this result is consistent with the 'realities of modern life and that consistency, fairness and justice are better served through the flexibility afforded by that rule.' " (Quoting *Pendergrast v. Aiken*, 293 N.C. 201, 216, 236 S.E.2d 787, 796 (1977).) Significantly, *Pendergrast* was a decision of our Supreme Court. In order to accept plaintiffs' invitation to adopt a new duty, we would have to disregard the specific holdings of prior decisions of our Supreme Court and of panels of this Court. We are not allowed to do so.

We are bound by the appellate courts' prior decisions. In accordance with that precedent, because plaintiffs have failed to present sufficient evidence that the City had a duty to maintain plaintiffs' pipes or that any actions by the City were the proximate cause of plaintiffs' property damage, we affirm the trial court's grant of summary judgment to the City and its denial of partial summary judgment to plaintiffs.

Affirmed.

Judges STEELMAN and STEPHENS concur.