IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-408

Filed 21 January 2026

Madison County, No. 23 CVS 000193-560

CARL FIRLEY and STEPHANIE FIRLEY, Plaintiffs,

v.

TOWN OF MARSHALL, NORTH CAROLINA,
a municipal corporation, JAMES C. BLAINE, Trustee,
and STATE EMPLOYEEES CREDIT UNION, Defendants.

Appeal by Plaintiffs from order entered 2 December 2024 by Judge R. Gregory Horne in Madison County Superior Court. Heard in the Court of Appeals 20 November 2025.

*Van Winkle, Buck, Wall, Starnes, and Davis, PA, by Brian D. Gulden & Taylor D. Osborne, for Plaintiffs–Appellants.*

*Leake & Stokes, PLLC, by Jamie A. Stokes, for Defendant–Appellee.*

MURRY, Judge.

Carl and Stephanie Firley (collectively, "Plaintiffs") appeal the trial court's dismissal with prejudice of their takings claim against the Town of Marshall in Madison County (Defendant).[1] They argue that the trial court erred by concluding

---

[1] The long-title caption of the appealed order lists both James C. Blaine and the State Employees Credit Union as co-Defendants. Because neither the trial court's order nor Plaintiffs on appeal substantively reference these other two parties in any manner, though, we discuss the Town of Firley as the singular defendant throughout this opinion.

that Defendant did not "take" their property to a degree requiring compensation and by finding certain facts in support of that holding. For the reasons below, this Court disagrees and affirms the trial court in all respects.

## I.    Background

Plaintiffs' rental property sits at 632 Walnut Drive (632 Walnut) downhill along Candler Drive from a non-party's property at 107 Candler Drive (107 Candler), all within the municipality of Marshall. A storm pipe installed by a different non-party at some point prior to 2019 sits halfway up the hill alongside Candler Drive; it diverts excess rainwater away from downhill properties. A massive and unexpected rainfall flooded the area of the municipality on 19 April 2019, causing multiple landslides throughout the area—including one at 107 Candler. More specifically, the rainfall collapsed the ground beneath its driveway, sending mud and debris down Candler Drive to the point of irreparably clogging the storm pipe. The resulting overflow so extensively swamped 632 Walnut that Plaintiffs' tenants had to find new housing.

Plaintiffs sued Defendant for effecting an inverse condemnation as a result on 30 June 2023, alleging that its failure to maintain the storm pipe "permanently and negatively impact[ed] the fair market value of" 632 Walnut. *See* N.G.G.S. § 40A-51 (2025) (inverse-condemnation statute). Defendant responded by denying the complaint's relevant allegations and by moving for summary judgment, which the

trial court denied on 22 August 2024. Both parties utilized supporting affidavits from expert witnesses in their respective filings.

On 18 November 2024, the trial court sat as factfinder to adjudicate the dispute. Plaintiffs offered as an expert witness Jeffrey Brown, a consultant engineer who performed their survey work for the case. He testified that, although "[i]t clearly provides benefit to the Town," only a private resident would have "installed the storm pipe" in accordance with standard practice across Western North Carolina's geography. Defendant's Town Administrator, Forrest Gilliam, confirmed that Defendant maintained Candler Drive itself but not the adjacent storm pipe. In maintaining Candler Drive, Defendant's agents placed "concrete bags" along its side after the rainfall to further divert debris away from its surface.

On 2 December 2024, the trial court entered an order concluding that "[n]o taking of . . . Plaintiff['s] land by . . . Defendant occurred." It found in relevant part that the "heavy rain event" occurred on 19 April 2019 (Finding #1). It also found that—despite Plaintiffs' expert "finding a reported 0.59-inch rainfall"—their own photographs and a concurrent gubernatorial "emergency declaration" indicated an amount "far in excess of . . . 0.59 inches" (Finding #6). (Brackets omitted.) Finally, it found that this "heavy and excessive rainfall . . . erode[d] and wash[ed] out" 107 Candler's driveway "into Candler Drive," "completely filling the storm pipe with mud and debris" as a result (Finding #7). Plaintiffs timely appealed this order.

## II.    Jurisdiction

This Court has jurisdiction to hear Plaintiffs' appeal because the trial court's dismissal of their claim with prejudice is the "final judgment of a superior court." N.C.G.S. § 7A-27(b)(1) (2025).

### III.    Analysis

On appeal, Plaintiffs argue that the trial court erred by dismissing their complaint against Defendant with prejudice. More specifically, they assert (1) that Defendant assumed sufficient control of the stormwater facilities to the extent that the flooding amounted to a constitutional taking[2] and (2) that the order's findings of fact relied on incompetent evidence. We review the former claim *de novo*, *Asheville Sports Props., LLC v. City of Asheville*, 199 N.C. App. 341, 344 (2009), but review the latter's findings only for whether "any competent evidence" supports them even if the record may contain some contrary evidence, *Hooper v. City of Wilmington*, 42 N.C. App. 548, 554 (1979). Based on these considerations, this Court affirms the trial court on both counts.

### A. Property Taking

---

[2]    At the outset, we note the unusual amount of time between the dates of Plaintiffs' alleged injury (19 April 2019) and the filing of their complaint (30 June 2023). The applicable statute of limitations requires an inverse-condemnation "action [to] be initiated within 24 months of the date of the taking." N.C.G.S. § 40A-51(a) (2025). Contrary to their complaint's assertion, Plaintiffs did not in fact "initiate" "this case . . . within 24 months of the date of taking." (Brackets omitted.) Although Defendant adequately pleaded this "affirmative defense" at the "appropriate procedural stage" of its initial answer, *McKinney v. Goins*, 387 N.C. 35, 49 (2025), we "take this argument as abandoned" because Defendant failed to renew it for our review on appeal, N.C. R. App. P 28(b)(6) (brackets omitted).

First, Plaintiffs argue that the trial court erred in concluding that Defendant did not "take" their property at 632 Walnut by failing to adequately maintain the storm pipe. Both our State Constitution and statutes "protect[ ] against an uncompensated taking and the fundamental right to just compensation" against the State government or one of its municipal subsidiaries. *Kirby v. N.C. Dep't of Transp.*, 368 N.C. 847, 853 (2016) (quotation omitted) (Law of the Land Clause); *see Cnty. of Moore v. Acres*, 284 N.C. 250, 256 (2022) (N.C. General Statutes). But an occupation need not be physical; a municipality may affect a taking by "substantial[ly] interfer[ing] with elemental rights growing out of the ownership of the property"— even if doing so accidentally. *Kirby*, 368 N.C. at 855.

More specifically, "increased flooding" and land damage as a "foreseeable direct result of government structures" may substantially interfere with a plaintiff's property rights to an actionable degree. *Lea Co. v. N.C. Dep't of Transp.*, 308 N.C. 603, 617 (1983). Because this situation "effectuates a taking without first initiating a formal condemnation proceeding," though, an injured party may "obtain[ ] just compensation [only] through an action in inverse condemnation" under N.C.G.S. § 40A-51. *Acres*, 284 N.C. App. at 256. Section 40A-51 allows an aggrieved property owner to sue a state-government entity where "property has been taken by an act or omission . . . and no complaint containing a declaration of taking has been filed." N.G.G.S. § 40A-51(a) (2025) (citation omitted). This statute necessarily requires the

plaintiff to show "injury . . . inflicted to its property" that "directly result[s] from the *defendant's* structures." *Lea Co.*, 308 N.C. at 629 (emphasis added).

Although the *Asheville* decision discusses municipal "control and management" of drainpipes in the context of a negligence claim, *Asheville*, 199 N.C. App. at 352, we find it materially instructive as to whether *Defendant's* "structures caused an actual permanent invasion" of Plaintiff's land here, *Lea Co.*, 308 N.C. at 618. Logic dictates that a municipality cannot take a property in law with an instrumentality it does not control in fact. In *Asheville*, the plaintiff corporation owned a business with a parking lot directly atop a "storm water drainage system." *Asheville,* 199 N.C. App. at 343. The parking lot's previous owner installed the pipe system in 1978, which remained undisturbed until the system's partial collapse in 2006 created "a large sinkhole" across the lot. *Id.* The plaintiff sued the defendant municipality for negligence after an adjacent sinkhole appeared the next year. *Id.* We affirmed the trial court's summary judgment for the defendant, reasoning that the plaintiff proffered "no evidence that the City . . . us[ed the] plaintiff['s] storm drains, that the City control[led] any pipes or drains immediately above or below [the] plaintiffs' property, or that . . . [it] performed any repair or other work on the pipes that ultimately connect with [the] plaintiff['s] pipes." *Id.* at 351. In short, the *Asheville* Court could discern no legal or factual control of any municipal instrumentality that somehow caused the damage alleged by the plaintiff. *See id.* at 353 ("Plaintiffs have

pointed to no evidence of *any* . . . affirmative acts taken by the City in this case." (emphasis added)).

So too here. In their initial complaint and here on appeal, Plaintiffs' argument hinges on the storm pipe's failure to safely channel excess rainwater and debris from the surrounding landscape. But a municipality must "undert[ake] to erect [the] structure" for this purpose to open itself to liability from this "reasonably foreseeable" failure. *Elliott v. Dep't of Transp.*, 291 N.C. App. 404, 408 (2023) (citing *Lea Co.*, 308 N.C. at 614). Through gritted teeth, Plaintiffs concede at trial and on appeal that Defendant "did not install the storm pipe." They also acknowledged at trial that Defendant "never maintained the pipe" next to the "ditch" because it "do[es]n't have the resources." So, Plaintiffs instead rely on expert testimony of tangential "benefits from the storm pipe['s] . . . collecti[on of] water from the top of the hill" by 107 Candler. But to maintain an inverse-condemnation suit as a matter of law, our case law has consistently required at least *some* degree of municipal appropriation of a utility *before* the alleged injury. *See Acres*, 284 N.C. App. at 258 (collecting cases on point). At no point did Defendant attempt to modify or correct any portion of Candler Drive until it placed concrete bags along its side—an action that Plaintiffs' own expert could not pinpoint to a specific time. Thus, this Court affirms the trial court's conclusion that Defendant did not "tak[e] . . . certain property rights of [P]laintiffs without just compensation." *Kirby*, 368 N.C. at 848.

## B. Summary Judgment

Second, Plaintiffs argue that the trial court erred by relying on incompetent evidence in adjudicating this dispute for Defendant. They believe that "clear, cogent and convincing . . . evidence" must support Findings #1 and #6–#8.[3] (Quoting *In re Allen*, 58 N.C. App. 322, 325 (1982).) We disagree in no small part because Defendant correctly notes the more lenient standard of review applicable to the trial court's findings in this context. As noted above, a trial court sitting as a factfinder need only support its findings with "*any* competent evidence" to bind this Court on appeal. *Hooper*, 42 N.C. App. at 554 (emphasis added). Contrary evidence in the record cannot overcome this presumption so long as "the trial court has the ability to view and hear witnesses' testimony, weigh the evidence presented, and resolve conflicts [there]in." *State v. Crisp*, 297 N.C. App. 400, 407 (2024).

Here, competent evidence clearly supports the trial court's findings that "a "serious flooding" from "a heavy rain event" caused "major landslides" collapsing Candler Drive. Plaintiffs contest Finding #1 only to the extent that their expert witness's affidavit drew upon that information. But they would have no reason to bring suit absent this landslide causation. Their complaint would similarly fall apart had the driveway's landslide collapse not "completely fill[ed] the storm pipe with mud and debris." And although Brown "reported a 0.59[-]inch rainfall" the day of the "rain

---

[3]  Plaintiffs urge this Court to "examine" Findings #2–#5 but offer no argument to do so beyond a conclusory allegation that they "fail to support the trial court's conclusions of law." Because they fail to "point to some evidence in the record to support [t]his argument," though, *State v. Ingram*, 227 N.C. App. 383, 389 (2013), we "take it as abandoned," N.C. R. App. 28(b)(6) (brackets omitted).

event," a trial court could reasonably infer "a level of rainfall far in excess" of this post hoc assessment based on "Plaintiffs' [own] photographs" of the scene and the sitting Governor's concurrent emergency declaration. *See* Exec. Order No. 127, 34 N.C. Reg. 1932 (May 1, 2020) (declaring state of emergency in Defendant Town based on "rain event that resulted in devastating flooding"). Thus, this Court holds that competent evidence supports the trial court's Findings #1–#8.

## IV.  Conclusion

Based on the above considerations, this Court affirms both the trial court's findings of fact and conclusions of law that it reached in dismissing Plaintiffs' complaint with prejudice.

AFFIRMED.

Judge GRIFFIN concurs.

Judge FREEMAN concurs in the result only.